1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAWYERS FOR CLEAN WATER, INC.
Caroline Koch (Bar No. 266068)
    Email: caroline@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
    Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit corporation;<br><br>          Plaintiff,<br><br>     vs.<br><br>A.L. GILBERT COMPANY, a California corporation,<br><br>          Defendant. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), by and through their counsel, hereby alleges:

## I.   JURISDICTION AND VENUE

1.     This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.     On February 3, 2015, CSPA issued a sixty (60) day notice of intent to sue letter ("Notice Letter") to A.L. Gilbert Company ("Defendant") for its violations of California's General Permit for Discharges of Storm Water Associated with Industrial Activities (*National Pollutant Discharge Elimination System (NPDES) General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ*) (hereinafter "Storm Water Permit") and the Clean Water Act. The Notice Letter informed Defendant of CSPA's intent to file suit against it to enforce the Storm Water Permit and the Clean Water Act.

3.     The Notice Letter was also sent to the registered agent for Defendant, the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board"), as required by 40 C.F.R. § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit 1 and is incorporated herein by reference.

4.     More than sixty (60) days have passed since the Notice Letter was served on Defendant and the State and Federal agencies. CSPA is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

5.     This complaint seeks relief for Defendant's substantive and procedural violations of the Storm Water Permit and the Clean Water Act resulting from Defendant's operations at 304 North

Yosemite Avenue, Oakdale, California 95361 ("Facility").

6.      Venue is proper in the Eastern District of California sitting in Fresno, California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and Civil Local Rule 120(d) because the sources of the violations are located within this judicial district in Stanislaus County.

## II.      LEGAL BACKGROUND

### A.      The Clean Water Act.

7.      The Clean Water Act requires point source discharges of pollutants to navigable waters be regulated by an NPDES permit. 33 U.S.C. § 1311(a); *see* 40 C.F.R. § 122.26(c)(1).

8.      Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Among other things, section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

9.      "Waters of the United States" are defined as "navigable waters," and "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide." 33 U.S.C. § 1362(7).

10.     The EPA promulgated regulations defining "waters of the United States." *See* 40 C.F.R. § 122.2. The EPA interprets waters of the United States to include not only traditionally navigable waters, but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and intermittent streams that could affect interstate commerce.

11.     Section 505(a)(1) of the Clean Water Act provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

12.     A.L. Gilbert Company is a "person" within the meaning of Section 502(5) of the Clean Water Act. *See* 33 U.S.C. § 1362(5).

13.     An action for injunctive relief is authorized under Section 505(a) of the Clean Water Act. *See* 33 U.S.C. § 1365(a).

14. Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day. *See* 33 U.S.C. §§ 1319(d) and 1365(a); 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

15. Section 505(d) of the Clean Water Act allows prevailing or substantially prevailing parties to recover litigation costs, including attorneys' fees, experts' fees, and consultants' fees. *See* 33 U.S.C. § 1365(d).

**B. California's Storm Water Permit.**

16. Section 402(p) of the Clean Water Act provides that storm water discharges associated with industrial activity are subject to the Clean Water Act NPDES permit requirement. 33 U.S.C. § 1342(p)(2)(B).

17. Section 402(b) of the Clean Water Act allows each state to administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water. *See* 33 U.S.C. § 1342(b). States with approved NPDES permit programs are authorized by Section 402(b) to regulate industrial storm water discharges through individual NPDES permits issued to dischargers and/or through the issuance of a statewide general NPDES permit applicable to all industrial storm water dischargers. *See id.*

18. California is a state authorized by EPA to issue NPDES permits.

19. In California, the State Board is charged with regulating pollutants to protect California's water resources. *See* Cal. Water Code § 13001.

20. The Storm Water Permit is a statewide general NPDES permit issued by the State Board pursuant to the Clean Water Act. *See* Storm Water Permit, Finding No. 15.

21. In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Storm Water Permit and comply with its terms, or obtain and comply with an individual NPDES permit. Storm Water Permit, Finding No. 2. Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI") to the State Board. *See* Storm Water Permit, Finding No. 3.

22. Violations of the Storm Water Permit are violations of the Clean Water Act. *See* Storm

Water Permit, Section C(1) (Standard Provisions).

**C.     The Storm Water Permit's Effluent Limitations and Receiving Water Limitations.**

23.     Effluent Limitation (B)(3) of the Storm Water Permit requires dischargers covered by the Storm Water Permit to reduce or prevent pollutants in storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic or non-conventional pollutants, and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and fecal coliform.

24.     EPA's NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("2008 MSGP Permit") includes numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks").

25.     The Benchmark Levels provide an objective standard to determine whether a facility's Best Management Practices ("BMPs") are successfully developed and/or implemented. *See* MSGP Fact Sheet, at 95 (2008), *available at* http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

26.     Discharges from an industrial facility containing pollutant concentrations that exceed Benchmark Levels indicate that the facility has not developed and/or implemented BMPs that meet BAT for toxic pollutants and/or BCT for conventional pollutants. *Id*.

27.     Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges from adversely impacting human health or the environment.

28.     Storm water discharges with pollutant levels that exceed levels known to adversely impact aquatic species and the environment are violations of Receiving Water Limitation C(1) of the Storm Water Permit.

29.     Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges that cause or contribute to an exceedance of any "applicable Water Quality Standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan."

30.     Water Quality Standards ("WQS") include pollutant concentration levels determined by the State Board, the various regional boards, and the EPA to be protective of the beneficial uses of the

1   waters that receive polluted discharges.

2       31.    The Water Quality Control Plan for the Sacramento and San Joaquin River (Basin Plan),

3   California Regional Water Quality Control Board, Central Valley Region ("Basin Plan") identifies the

4   "Beneficial Uses" of water bodies in the region. The existing and/or potential Beneficial Uses for the

5   Stanislaus River include, at a minimum: Municipal and Domestic Supply, Agricultural Supply,

6   Industrial Processes Supply, Industrial Service Supply, Water Contact Recreation, Non-contact Water

7   Recreation, Warm Freshwater Habitat, Cold Freshwater Habitat, Migration, Spawning, Wildlife Habitat,

8   Navigation. *See* Basin Plan at Table II-1

9       32.    Surface waters that cannot support the Beneficial Uses of those waters listed in the Basin

10  Plan are designated as impaired water bodies pursuant to section 303(d) of the Clean Water Act.

11  According to the 2010 303(d) List of Impaired Water Bodies, downstream of the Facility, the Stanislaus

12  River is impaired by temperature, unknown toxicity, and mercury, among other pollutants, and the

13  Sacramento-San Joaquin River Delta is impaired by, among other things, various pesticides, mercury,

14  and unknown toxicity. 2010 Integrated Report – All Assessed Waters, available at:

15  http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on

16  April 6, 2015).

17      33.    The unknown toxicity impairment listing for the Stanislaus River is based, at least in part,

18  on sampling data for metals such as arsenic, copper, lead, and zinc as well as data for TSS, pH, and

19  Nitrate. 2010 Integrated Report – Decision ID 7507, available at:

20  http://www.waterboards.ca.gov/water_issues/programs/tmdl/2010state_ir_reports/01260.shtml#7507

21  (last accessed on April 6, 2015).

22      34.    Discharges of pollutants at levels above WQS contribute to the impairment of the

23  Beneficial Uses of the waters receiving the discharges.

24      35.    WQS applicable to dischargers covered by the Storm Water Permit include, but are not

25  limited to, those set out in the Basin Plan and in the Criteria for Priority Toxic Pollutants for the State of

26  California ("CTR"), 40 C.F.R. § 131.38.

27      36.    The CTR includes numeric criteria set to protect human health and the environment in the

28  State of California. Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic

Pollutants for the State of California Factsheet, EPA-823-00-008 (April 2000), available at:

http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

37.     Discharges with pollutant levels in excess of the CTR criteria, the Basin Plan standards, and/or other applicable WQS are violations of Receiving Water Limitation C(2) of the Storm Water Permit.

**D.     The Storm Water Permit's Storm Water Pollution Prevention Plan Requirements.**

38.     Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements of the Storm Water Permit prior to commencing industrial activities.

39.     The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. Storm Water Permit, Section A(2).

40.     Section A(3) of the Storm Water Permit requires a discharger to name the members of its on-site Storm Water Pollution Prevention Team and to indicate each team member's responsibilities in developing, implementing, and revising the SWPPP to ensure compliance with the Storm Water Permit.

41.     Section A(4) of the Storm Water Permit requires that the SWPPP include a site map that depicts, among other things: the facility boundaries, storm water drainage areas and directions of flow for each drainage area, on-site surface water bodies, nearby water bodies, areas of soil erosion, and municipal storm drain inlets where the facility's storm water discharges may be received (Section A(4)(a)); the location of the storm water collection, conveyance and discharge system and structural control measures that affect storm water discharges (Section A(4)(b)); an outline of all impervious areas of the facility, including paved areas, buildings, covered storage areas, or other roofed structures (Section (4)(c)); locations where materials are directly exposed to precipitation and where significant spills or leaks have occurred (Section A(4)(d)); and areas of industrial activity, including areas that are actual and potential pollutant sources (Section A(4)(e)).

42.     Section A(5) of the Storm Water Permit requires that the SWPPP include a list of significant materials handled and stored at the site.

43.     Section A(6)(a) of the Storm Water Permit requires that the SWPPP include a narrative description of the facility's industrial activities, associated potential pollutant sources, and potential pollutants that could be discharged in storm water discharges.

44.     Section A(6)(b) of the Storm Water Permit requires that the SWPPP include a summary of all areas of industrial activities, potential pollutant sources, and potential pollutants.

45.     Section A(7)(a) of the Storm Water Permit requires that the SWPPP include a narrative assessment of all industrial activities and potential pollutant sources to determine which areas of the facility are likely sources of pollutants and which pollutants are likely to be present in the storm water discharges.

46.     Section A(7)(b) of the Storm Water Permit requires that the SWPPP include a summary of the areas of the facility that are likely sources of pollutants and the corresponding pollutants likely to be present in storm water discharges.

47.     Section A(8) of the Storm Water Permit requires that the SWPPP include a narrative description of the storm water BMPs to be implemented at the facility for each potential pollutant and its source. Dischargers must develop and implement structural and/or non-structural BMPs to reduce or prevent pollutants in storm water discharges. Storm Water Permit, Sections A(8)(a) and (b).

48.     Section A(9) of the Storm Water Permit requires the discharger to evaluate the SWPPP on an annual basis and revise it as necessary to ensure compliance with the Storm Water Permit. Sections A(9)(a)-(c) of the Storm Water Permit also require that the discharger conduct an annual comprehensive site compliance evaluation that includes a review of all visual observation records, inspection reports, and sampling and analysis results; a visual inspection of all potential pollutant sources for evidence of, or the potential for, pollutants entering the drainage system; a review and evaluation of all BMPs to determine whether the BMPs are adequate, properly implemented and maintained, or whether additional BMPs are needed; and a visual inspection of equipment needed to implement the SWPPP. Section A(9)(d) of the Storm Water Permit requires that the discharger submit an evaluation report that includes an identification of personnel performing the evaluation, the date(s) of the evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP revisions, any incidents of non-compliance and the corrective actions taken, and a certification that the discharger is in

compliance with the Storm Water Permit. Storm Water Permit, Section A(9)(d)(i)-(vi). If certification of compliance cannot be provided, the discharger must explain in the evaluation report why the facility is not in compliance with the Storm Water Permit. *Id*., Section A(9)(d). The evaluation report shall be submitted as part of the Annual Report required by Section B(14) of the Storm Water Permit. *Id*.

49.     Sections A(10) and E(2) of the Storm Water Permit requires that the discharger revise the SWPPP as necessary prior to changes in industrial activities, or as otherwise required by the Storm Water Permit.

**E.     The Storm Water Permit's Monitoring and Reporting Requirements.**

50.     Provision E(3) and Section B(1) of the Storm Water Permit require dischargers to develop and implement a Monitoring and Reporting Program ("M&RP") prior to commencing industrial activities.

51.     The objectives of the M&RP are to ensure that BMPs have been adequately developed and implemented, revised when necessary, and that storm water discharges are in compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. Storm Water Permit, Sections B(2)(a) and B(2)(b).

52.     The M&RP aids in the implementation and revision of the SWPPP and measures the effectiveness of BMPs to prevent or reduce pollutants in storm water discharges. Storm Water Permit, Section B(2)(c) and B(2)(d).

53.     Section B(2)(d) requires that the M&RP "shall be revised" as necessary to ensure compliance with the Storm Water Permit.

54.     Section B(4)(a) of the Storm Water Permit requires dischargers to conduct monthly visual observations of storm water discharges during the first hour of discharge and at all discharge locations during the Wet Season (defined as October 1 – May 30).

55.     Section B(4)(c) of the Storm Water Permit requires dischargers to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants in storm water discharges from the facility. This same section requires dischargers to maintain records of observations, observation dates, discharge locations observed, and responses taken to reduce or prevent pollutants from contacting storm water discharges.

Complaint                                           9

Section B(4)(c) of the Storm Water Permit also requires dischargers to revise the SWPPP as necessary to ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility.

56.     Sections B(5) and B(7) of the Storm Water Permit require dischargers to visually observe and collect samples of storm water discharges from all locations where storm water is discharged.

57.     Section B(5)(a) of the Storm Water Permit requires dischargers to collect storm water samples during the first hour of discharge from the first storm event of the Wet Season and at least one other storm event in the Wet Season. All storm water discharge locations must be sampled. *See* Storm Water Permit, Section B(5)(a). Facility operators that do not collect samples from the first storm event of the Wet Season are still required to collect samples from two other storm events of the Wet Season and must explain in the Annual Report why the first storm event was not sampled. *See id*.

58.     Section B(5)(b) requires that sampling conducted pursuant to the Storm Water Permit occurs during scheduled facility operating hours that are preceded by at least three (3) working days without storm water discharge.

59.     Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze each sample for pH, specific conductance ("SC"), TSS, and total organic carbon ("TOC"). A discharger may substitute analysis for O&G instead of TOC.

60.     Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to analyze each sample for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the facility, which for the Facility include, but are not limited to, arsenic, cobalt, copper, iron, magnesium, and zinc.

61.     Section B(14) of the Storm Water Permit requires that dischargers submit an Annual Report to the applicable regional board by July 1 of each year. The Annual Report must include a summary of visual observations and sampling results, an evaluation of the visual observations and sampling and analysis results, laboratory reports, the annual comprehensive site compliance evaluation report specified in Section A(9), an explanation of why a facility did not implement any activities required, and the records specified in Section B(13)(i).

///

///

1    III.    **PARTIES**

2          A.    **California Sportfishing Protection Alliance.**

3          62.    CSPA is a 501(c)(3) non-profit public benefit conservation and research organization.

4    CSPA was established in 1983 for the purpose of conserving, restoring, and enhancing the state's water

5    quality, wildlife, fishery resources, aquatic ecosystems, and associated riparian habitats. CSPA

6    accomplishes its mission by actively seeking federal, state, and local agency implementation of

7    environmental regulations and statutes and routinely participates in administrative, legislative, and judicial

8    proceedings.

9          63.    When necessary, CSPA directly initiates enforcement actions on behalf of itself and its

10   members to protect public trust resources.

11         64.    CSPA's office is located at 3536 Rainier Avenue, Stockton, California 95204.

12         65.    Members of CSPA live, work, and/or recreate near the Stanislaus River and its tributaries.

13   For example, CSPA members use and enjoy these waters for fishing, boating, swimming, bird watching,

14   picnicking, viewing wildlife, and engaging in scientific study.

15         66.    The unlawful discharge of pollutants from the Facility impairs each of these uses. Further,

16   the Facility's discharges of polluted storm water are ongoing and continuous. As a result, CSPA's

17   members' use and enjoyment of the Stanislaus River and its tributaries has been and continues to be

18   adversely impacted.

19         67.    Thus, the interests of CSPA's members have been, are being, and will continue to be

20   adversely affected by the failure of the Facility owner and/or operator to comply with the Storm Water

21   Permit and the Clean Water Act.

22         B.    **The Facility Owner and/or Operator.**

23         68.    The A.L. Gilbert Company is an active corporation registered to operate in California

24   since at least 1975.

25         69.    CSPA is informed and believes, and thereon alleges, that the A.L. Gilbert Company has

26   been an owner and/or operator of the Facility since at least 1992. The A.L. Gilbert Company will herein

27   be referred to as the Facility Owner and/or Operator.

28

Complaint                                  11

70.     The Registered Agent for A.L. Gilbert Company is Michael D. Schonhoff located at 304 North Yosemite Avenue, Oakdale, California 95361.

**IV.     FACTUAL BACKGROUND**

    **A.     Facility Site Description.**

71.     CSPA is informed and believes, and thereon alleges, that the Facility spans across two parcels with a combined acreage of at least approximately 7 acres.

72.     The Facility is bisected by C Street.

73.     The Facility Owner and/or Operator identifies all structures and activities to the north of C Street as the North Mill.

74.     Structures and improvements on the North Mill include the operations building, office/warehouse, maintenance shop, storage warehouse, covered storage, outside aboveground bulk oil storage, liquid feed, fat and molasses tanks, boiler operations, truck washing station, railroad tracks, pavement, curbs, fencing, and truck scale.

75.     CSPA is informed and believes, and thereon alleges, that structures and improvements on the North Mill include outdoor loading and unloading facilities.

76.     The Facility Owner and/or Operator identifies all structures and activities to the south of C Street as the South Mill.

77.     The structures and improvements located at the South Mill include a warehouse/grain bagging building, multiple outside aboveground grain and feed tanks, aboveground tanks of mineral oil and soy oil, railroad tracks, pavement, curbs, and fencing.

78.     CSPA is informed and believes, and thereon alleges, that structures and improvements on the South Mill include outdoor loading and unloading facilities.

79.     CSPA is informed and believes, and thereon alleges, that the points of egress/ingress to the North Mill of the Facility include two (2) driveways leading to C Street and multiple driveways leading to North Yosemite Avenue.

80.     CSPA is informed and believes, and thereon alleges, that the points of egress/ingress to the South Mill of the Facility include two (2) driveways leading to C Street and multiple driveways leading to North Yosemite Avenue.

**B.     The Facility's Storm Water Permit Coverage.**

81.     Information available to CSPA indicates that the Facility Owner and/or Operator submitted an NOI for the Facility on or about March 25, 1992 ("NOI").

82.     The NOI lists the facility address as 304 N. Yosemite Avenue, Oakdale, California 95361.

83.     The NOI describes the Facility as consisting of approximately 7 acres 64% of which is impervious.

84.     Upon receipt of the NOI, the State Board assigned the Facility Waste Discharger Identification number 5S50I001719.

85.     The NOI lists a Standard Industrial Classification ("SIC") code for the Facility as 2048 (prepared feeds manufacturing)

86.     The NOI lists a SIC code for the Facility as 4212 (local trucking without storage).

87.     The Storm Water Permit regulates SIC code 2048 facilities where industrial materials, equipment, or activities are exposed to storm water. *See* Storm Water Permit, Attachment 1, ¶ 10.

88.     CSPA is informed and believes, and thereon alleges, that industrial materials, equipment, and activities are exposed to storm water throughout the Facility, including storage and processing of feed and feed ingredients.

89.     CSPA is informed and believes, and thereon alleges, that the areas at the Facility where industrial materials, equipment, and/or activities are exposed to storm water require Storm Water Permit coverage.

90.     The Storm Water Permit regulates SIC code 4212 facilities which have vehicle maintenance shops and equipment cleaning operations, and the portions of the facilities involved in vehicle maintenance (including vehicle rehabilitation, mechanical repairs, painting, fueling, and lubrication) or other operations identified in the Storm Water Permit as associated with industrial activities. *See* Storm Water Permit, Attachment 1, ¶ 8.

91.     CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator conducts activities related to vehicle maintenance and equipment cleaning throughout the Facility.

Complaint                                    13

92.     CSPA is informed and believes, and thereon alleges, that the areas at the Facility where equipment cleaning occurs require Storm Water Permit coverage.

93.     CSPA is informed and believes, and thereon alleges, that the areas at the Facility where vehicle maintenance occurs require Storm Water Permit coverage.

**C.     Defendant's SWPPP and M&RP for the Facility.**

94.     In a January 20, 2015, letter to the Facility Owner and/or Operator, the Regional Board requested a copy of the current Facility SWPPP and M&RP.

95.     On or about February 23, 2015, the Regional Board provided CSPA with a copy of the SWPPP and M&RP that it received from the Facility Owner and/or Operator in response to its January 20, 2015, letter.

96.     The SWPPP and M&RP provided to CSPA by the Regional Board on or about February 23, 2015, is dated April 2012.

97.     CSPA is informed and believes, and thereon alleges, that the SWPPP dated April 2012 is the current SWPPP and M&RP for the Facility ("Facility SWPPP").

**D.     Industrial Activities, Pollutant Sources, Pollutants, and BMPs at the Facility.**

**i.     Industrial Activities and Pollutant Sources**

98.     CSPA is informed and believes, and thereon alleges, that the following industrial operations are conducted at the Facility: dairy feed manufacturing; material handling and storage; vehicle maintenance; equipment cleaning; and vehicle and equipment storage.

99.     CSPA is informed and believes, and thereon alleges, that the Facility's industrial activities and areas of industrial activity are pollutant sources.

100.     Section 7.0 and Table 1 of the Facility SWPPP describe significant materials handled and stored at the Facility.

101.     Section 8.0 of the Facility SWPPP describes potential pollutant sources at the Facility.

102.     Section 8.1 of the Facility SWPPP lists industrial activities at the Facility as including storage and processing of feed, feed ingredients, grains, and trace minerals, and the maintenance and storage of over the road fleet vehicles and on site equipment.

103.     Section 8.2 of the Facility SWPPP states that raw materials and products are handled and

1   stored at the Facility in the types and quantities as described in Table 1 of the Facility SWPPP.

2       104.    Section 8.2.1 of the Facility SWPPP describes the material handling and storage areas at

3   the North Mill.

4       105.    Section 8.2.2 of the Facility SWPPP describes the material handling and storage areas at

5   the South Mill.

6       106.    Section 8.3 of the Facility SWPPP describes dust and particular [sic] generating activities

7   at the Facility.

8       107.    Section 8.3.1 of the Facility SWPPP lists the dust generating activities at the North Mill

9   as including grain/feed loading and unloading areas, and feed production in the North Mill operations

10  building.

11      108.    Section 8.3.2 of the Facility SWPPP lists the dust generating activities at the South Mill

12  as including grain/feed loading and unloading areas, mineral mixing in mixing room and grain bagging

13  area, and the bagging of mixed feeds in the south mill warehouse/grain bagging building.

14      109.    Section 8.5 of the Facility SWPPP states that no non-storm water discharges occur at the

15  Facility.

16      110.    Section 8.5 of the Facility describes activities that generate wastewater at the Facility that

17  are discharged to the City of Oakdale sewer system, which include the truck washing station and the

18  boiler blow down discharge.

19      111.    Section 9.0 of the Facility SWPPP provides the Facility Owner and/or Operator's

20  assessment of potential pollutant sources at the Facility.

21      112.    CSPA is informed and believes, and thereon alleges, that the Facility SWPPP fails to

22  adequately describe all of the significant materials and processes that are related to the Facility's

23  industrial activities.

24      113.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

25  Operator has failed, and continues to fail to, adequately describe all of the significant materials and

26  processes that are related to the Facility's industrial activities.

27      114.    CSPA is informed and believes, and thereon alleges, that the Facility SWPPP fails to

28  adequately describe all of the Facility's industrial activities.

Complaint                                   15

115. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed, and continues to fail to, adequately describe all of the Facility's industrial activities.

116. CSPA is informed and believes, and thereon alleges, that the Facility SWPPP fails to adequately describe all of the Facility's potential pollutant sources.

117. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed, and continues to fail to, adequately describe all of the Facility's potential pollutant sources.

118. CSPA is informed and believes, and thereon alleges, that the Facility SWPPP fails to adequately assess all of the Facility's potential pollutant sources.

119. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed, and continues to fail to, adequately assess potential pollutant sources at the Facility.

120. Section 2.0 of the Facility SWPPP describes the structures and improvements on the North Mill and the South Mill.

121. CSPA is informed and believes, and thereon alleges, that Section 6.0, Figure 2, Figure 3, Figure 4, and Figure 5 of the Facility SWPPP constitute the Facility site map.

122. CSPA is informed and believes, and thereon alleges, that the description of the structures and improvements included in Section 2.0 is not consistent with the structures and improvements depicted on the Facility site map.

123. CSPA is informed and believes, and thereon alleges, that the Facility site map is inadequate, as it does not identify the location of significant spills and leaks at the Facility.

124. CSPA is informed and believes, and thereon alleges, that the Facility site map is inadequate, as it does not identify the location of all industrial activities at the Facility.

**ii. Pollutants**

125. CSPA is informed and believes, and thereon alleges, that pollutants associated with the Facility include, but are not limited to: TSS; TOC; pH-affecting substances; BOD; O&G; Nitrite Plus Nitrate ("N+N"); antifreeze; and heavy metals, including aluminum, arsenic, cadmium, chromium, copper, cobalt, iron, lead, magnesium, and zinc.

126.   Table 2 of the Facility SWPPP describes areas that are likely sources of pollutants, corresponding types of pollutants.

127.   Table 2 of the Facility SWPPP lists types of pollutants corresponding with areas of industrial activities and pollutant sources as including "bulk dry animal feed (grains, and minerals)," "petroleum," "hydrocarbons (fuels, lubricants)," "grains," "minerals," "hydrocarbons (motor oil and hydraulic oil)," "antifreeze," "chemicals," "liquid animal fat," "molasses," "mineral oil," "soy oil," "minerals and chemicals (see Table 1)," "soap," "cleaning chemicals," "petroleum hydrocarbons (fuel, lubricants, etc.)," "debris," "pH," "boiler chemical," and "metals."

128.   CSPA is informed and believes, and thereon alleges, that Table 2 fails to adequately describe the type of pollutants associated with likely pollutant sources at the Facility, as Table 2 lists only generalized categories of pollutants such as "metals" and "chemicals" rather than specific pollutants such as aluminum, iron, N+N, TSS, or zinc.

129.   CSPA is informed and believes, and thereon alleges, that the Facility SWPPP does not list all pollutants that are associated with industrial activities or areas at the Facility because, at a minimum, Table 2 of the Facility SWPPP fails to list TSS, N+N, aluminum, arsenic, cadmium, chromium, copper, cobalt, iron, lead, magnesium, and zinc as pollutants associated with industrial activities or areas at the Facility.

130.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed, and continues to fail to, identify all pollutants that are associated with industrial activities or areas at the Facility because, at a minimum, Facility Owner and/or Operator has failed, and continues to fail to, identify TSS, N+N, aluminum, arsenic, cadmium, chromium, copper, cobalt, iron, lead, magnesium, or zinc as pollutants associated with industrial activities or areas at the Facility.

**iii.  BMPs**

131.   CSPA is informed and believes, and thereon alleges, that industrial activities occur throughout the Facility outdoors without adequate cover to prevent storm water exposure to pollutant sources.

132.   CSPA is informed and believes, and thereon alleges, that industrial activities occur throughout the Facility outdoors without secondary containment or other adequate treatment measures to

1   prevent polluted storm water from discharging from the Facility.

2       133.   Table 2 of the Facility SWPPP identifies the BMPs for the areas of industrial activity at

3   the Facility.

4       134.   Section 10.0 of the Facility SWPPP describes non-structural and structural BMPs at the

5   Facility.

6       135.   CSPA is informed and believes, and thereon alleges, that neither Table 2, Section 10.0,

7   nor any other section of the Facility SWPPP describes adequate BMPs to reduce or prevent pollutants in

8   the Facility's discharges.

9       136.   CSPA is informed and believes, and thereon alleges, that without properly identifying all

10  industrial activities at the Facility in the SWPPP, the Facility Owner and/or Operator cannot and has not

11  developed all appropriate BMPs.

12      137.   CSPA is informed and believes, and thereon alleges, that without properly identifying all

13  industrial activities at the Facility in the SWPPP, the Facility Owner and/or Operator cannot and has not

14  implemented all appropriate BMPs.

15      138.   CSPA is informed and believes, and thereon alleges, that without properly identifying all

16  significant materials at the Facility in the SWPPP, the Facility Owner and/or Operator cannot and has

17  not developed all appropriate BMPs.

18      139.   CSPA is informed and believes, and thereon alleges, that without properly identifying all

19  significant materials at the Facility in the SWPPP, the Facility Owner and/or Operator cannot and has

20  not implemented all appropriate BMPs.

21      140.   CSPA is informed and believes, and thereon alleges, that the Facility SWPPP does not

22  include an adequate assessment of the Facility's BMPs corresponding to potential pollutant sources and

23  associated pollutants.

24      141.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

25  Operators has failed and continues to fail to adequately assess the Facility's BMPs corresponding to

26  potential pollutant sources and associated pollutants.

27      142.   CSPA is informed and believes, and thereon alleges, that the Facility SWPPP does not

28  include an adequate description of the Facility BMPs.

143.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operators has failed and continues to fail to adequately describe the Facility BMPs.

144.    CSPA is informed and believes, and thereon alleges, that the Facility SWPPP does not include an adequate analysis of the effectiveness of the BMPs at the Facility.

145.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operators has failed and continues to fail to analyze the effectiveness of the BMPs at the Facility.

146.    CSPA is informed and believes, and thereon alleges, that the Facility SWPPP does not include an adequate summary of the BMPs by pollutant source.

147.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to provide an adequate summary of the BMPs by pollutant source.

148.    CSPA is informed and believes, and thereon alleges, that the Facility Owner's and/or Operator's failure to develop and/or implement BMPs required by the Storm Water Permit to reduce or eliminate pollutant levels in discharges is documented by the Regional Board.

149.    The Regional Board issued its first notification of inadequate BMPs to the Facility Owner and/or Operator in October 2009 based on high levels of pollutants in the Facility's storm water discharges during the 2008-2009 Wet Season.

150.    CSPA is informed and believes, and thereon alleges, that the Regional Board put the Facility Owner and/or Operator on notice that the BMPs and general storm water management at the Facility must be improved.

151.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator responded on November 18, 2009, indicating improvements would be made throughout the next Wet Season, and that the Facility SWPPP would be updated.

152.    Via letter dated October 14, 2010, the Regional Board informed the Facility Owner and/or Operator that levels of pollutants in discharges from the Facility indicate that BMPs implemented at the Facility are not sufficient.

153.    The Regional Board's October 14, 2010, letter required the Facility Owner and/or Operator to modify its BMPs.

154.     The Facility Owner and/or Operator responded to the Regional Board's October 14, 2010, letter on November 9, 2010.

155.     CSPA is informed and believes, and thereon alleges, that in its November 9, 2010, response the Facility Owner and/or Operator stated that: (1) BMPs at the Facility were not fully implemented, (2) the previously revised SWPPP had not been in effect until March 2010, and (3) it believed the next year's sample results would show improvement.

156.     The Regional Board issued a California Water Code section 13267 Order dated March 16, 2012.

157.     CSPA is informed and believes, and thereon alleges, that the Regional Board's March 16, 2012, 13267 Order informed the Facility Owner and/or Operator that concentrations of pollutants in discharges from the Facility continue to demonstrate that current BMPs are insufficient and that modifications are required.

158.     CSPA is informed and believes, and thereon alleges, that the 13267 Order required the Facility Owner and/or Operator to review past sampling data, annual reporting, and current BMPs, and modify existing BMPs and/or implement new BMPs to reduce or eliminate the discharge of pollutants as necessary to comply with the Storm Water Permit.

159.     The 13267 Order required the Facility Owner and/or Operator to submit a written response by April 23, 2012, along with a revised SWPPP and M&RP for the Facility that addressed the exceedances and Storm Water Permit violations.

160.     The Facility Owner and/or Operator responded to the Regional Board's 13267 Order on April 23, 2012.

161.     CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's response to the Regional Board's 13267 Order states that BMPs were being improved, that BMP implementation would be completed by May 16, 2012, and that future sample results would show reduction in pollutant levels.

162.     CSPA is informed and believes, and thereon alleges, that storm water sampling, including storm water sampling done after May 16, 2012, at the Facility demonstrates that the Facility's storm water discharges contain concentrations of pollutants above the Benchmark Levels, including, but not

1   limited to, O&G, pH, TSS, N+N, aluminum, iron, and zinc.

2   163.   CSPA is informed and believes, and thereon alleges, that the repeated and significant

3   exceedances of Benchmark Levels demonstrate that the Facility Owner and/or Operator failed and

4   continues to fail to develop BMPs to prevent the exposure of pollutants to storm water, and to prevent

5   discharges of polluted storm water from the Facility.

6   164.   CSPA is informed and believes, and thereon alleges, that the repeated and significant

7   exceedances of Benchmark Levels demonstrate that the Facility Owner and/or Operator failed and

8   continues to fail to implement BMPs to prevent the exposure of pollutants to storm water, and to prevent

9   discharges of polluted storm water from the Facility.

10   165.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

11   Operator has failed and continues to fail to adequately develop a SWPPP that complies with the Storm

12   Water Permit.

13   166.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

14   Operator has failed and continues to fail to adequately implement a SWPPP that complies with the

15   Storm Water Permit.

16   167.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

17   Operator has failed and continues to fail to adequately revise the SWPPP, despite repeated and

18   significant concentrations of pollutants in the Facility's storm water discharges.

19   **E.   Discharge Locations at the Facility.**

20   168.   CSPA is informed and believes, and thereon alleges, that there are at least seventeen (17)

21   discharge locations at the Facility.

22   169.   CSPA is informed and believes, and thereon alleges, that there are at least six (6)

23   discharge locations along Yosemite Avenue at the North Mill.

24   170.   CSPA is informed and believes, and thereon alleges, that there are at least eleven (11)

25   discharge locations along Yosemite Avenue at the South Mill.

26   171.   Section 6.0 of the Facility SWPPP states that locations where storm water discharges to

27   Yosemite Avenue are indicated by flow arrows on Figure 2, Figure 3, Figure 4, and Figure 5.

28   172.   Figure 3 of the Facility SWPPP identifies at least six (6) discharge locations and four (4)

Complaint                                        21

1   sample points at the North Mill.

2       173.    Figure 4 of the Facility SWPPP identifies at least eleven (11) discharge locations and four

3   (4) sample points at the South Mill.

4       174.    In the 2009-2010 and 2010-2011 Annual Reports the Facility Owner and/or Operator

5   reports that there are nine (9) discharge locations at the Facility.

6       175.    In the 2011-2012, 2012-2013, and 2013-2014 Annual Reports the Facility Owner and/or

7   Operator reports that there are eight (8) discharge locations at the Facility.

8       176.    The Facility SWPPP states that storm water from the Facility flows to Yosemite Avenue

9   into the City of Oakdale's municipal separate storm sewer system ("MS4").

10      177.    CSPA is informed and believes, and thereon alleges, that the Facility SWPPP site map

11  does not include an outline of all storm water drainage areas within the Facility boundaries.

12      178.    CSPA is informed and believes, and thereon alleges, that the Facility SWPPP site map

13  does not adequately identify all discharge points.

14      179.    CSPA is informed and believes, and thereon alleges, that the Facility SWPPP site map

15  does not include MS4 drain inlets that receive the Facility's storm water discharges.

16      180.    CSPA is informed and believes, and thereon alleges, that the pollutants associated with

17  the Facility have been and continue to be tracked throughout the Facility.

18      181.    CSPA is informed and believes, and thereon alleges, that trucks and vehicles track

19  sediment, dirt, oil and grease, metal particles, and other pollutants off-site via the driveways from the

20  North Mill.

21      182.    CSPA is informed and believes, and thereon alleges, that trucks and vehicles track

22  sediment, dirt, oil and grease, metal particles, and other pollutants off-site via the driveways from the

23  South Mill.

24      183.    CSPA is informed and believes, and thereon alleges, that the driveways on the North Mill

25  and the South Mill are discharge locations at the Facility.

26      **F.    The Facility's Discharges to the Receiving Waters.**

27      184.    CSPA is informed and believes, and thereon alleges, that pollutants from the Facility

28  discharge from each of the Facility's discharge locations to the MS4, which flows to the Stanislaus

Complaint                                    22

1    River and its tributaries (collectively the "Receiving Waters").

2        185.    CSPA is informed and believes, and thereon alleges, that each of the Receiving Waters is

3    a water of the United States.

4        186.    CSPA is informed and believes, and thereon alleges, that polluted storm water discharges

5    from the Facility to the indirectly to the Receiving Waters via the MS4.

6        **G.    Defendant's Sampling, Monitoring, and Reporting.**

7        187.    Via a Public Records Act request to the Regional Board, CSPA obtained an Annual

8    Report for the Facility dated June 28, 2010.

9        188.    CSPA is informed and believes, and thereon alleges, that the Annual Report dated June

10   28, 2010, obtained from the Regional Board is the 2009-2010 Annual Report for the Facility.

11       189.    Via a Public Records Act request to the Regional Board, CSPA obtained an Annual

12   Report for the Facility dated June 8, 2011.

13       190.    CSPA is informed and believes, and thereon alleges, that the Annual Report dated June 8,

14   2011, obtained from the Regional Board is the 2010-2011 Annual Report for the Facility.

15       191.    Via a Public Records Act request to the Regional Board, CSPA obtained an Annual

16   Report for the Facility dated June 5, 2012.

17       192.    CSPA is informed and believes, and thereon alleges, that the Annual Report dated June 5,

18   2012, obtained from the Regional Board is the 2011-2012 Annual Report for the Facility.

19       193.    Via a Public Records Act request to the Regional Board, CSPA obtained an Annual

20   Report for the Facility dated June 18, 2013.

21       194.    CSPA is informed and believes, and thereon alleges, that the Annual Report dated June

22   18, 2013, obtained from the Regional Board is the 2012-2013 Annual Report for the Facility.

23       195.    Via a Public Records Act request to the Regional Board, CSPA obtained an Annual

24   Report for the Facility dated June 17, 2014.

25       196.    CSPA is informed and believes, and thereon alleges, that the Annual Report dated June

26   17, 2014, obtained from the Regional Board is the 2013-2014 Annual Report for the Facility.

27       197.    CSPA refers to the above-described 2009-2010 Annual Report, 2010-2011 Annual

28   Report, 2011-2012 Annual Report, 2012-2013 Annual Report, and 2013-2014 Annual Report

1  collectively as Defendant's "Annual Reports."

2  198.    CSPA is informed and believes, and thereon alleges, that Section B: Monitoring Program

3  and Reporting Requirements of the Facility SWPPP constitutes the M&RP for the Facility.

4  **i.  2009-2010 Annual Report**

5  199.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

6  Operator reports in the 2009-2010 Annual Report that it failed to conduct visual observations of all

7  drainage areas for unauthorized non-storm water discharges for every quarter of the 2009-2010 reporting

8  year.

9  200.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

10  Operator failed to conduct visual observations of all drainage areas for unauthorized non-storm water

11  discharges for every quarter of the 2009-2010 reporting year.

12  201.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

13  Operator failed to report in the 2009-2010 Annual Report that visual observations for unauthorized non-

14  storm water discharges were conducted for all drainage areas at the Facility.

15  202.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

16  Operator failed to conduct visual observations for unauthorized non-storm water discharges for all

17  drainage areas at the Facility in the 2009-2010 reporting year.

18  203.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

19  Operator reports in the 2009-2010 Annual Report that it failed to conduct all observations of

20  unauthorized non-storm water discharges within 6-18 weeks of each other.

21  204.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

22  Operator failed to conduct all observations of unauthorized non-storm water discharges within 6-18

23  weeks of each other during the 2009-2010 reporting year.

24  205.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

25  Operator failed to include required explanations of failures to conduct required visual observations of

26  unauthorized non-storm water discharges in the 2009-2010 Annual Report.

27  206.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

28  Operator reports in the 2009-2010 Annual Report that it failed to conduct visual observations of all

drainage areas for authorized non-storm water discharges for every quarter of the 2009-2010 reporting year.

207.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations of all drainage areas for authorized non-storm water discharges for every quarter of the 2009-2010 reporting year.

208.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2009-2010 Annual Report that visual observations for authorized non-storm water discharges were conducted for all drainage areas at the Facility.

209.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for authorized non-storm water discharges for all drainage areas at the Facility in the 2009-2010 reporting year.

210.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2009-2010 Annual Report that it failed to conduct all observations of authorized non-storm water discharges within 6-18 weeks of each other.

211.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct all observations of authorized non-storm water discharges within 6-18 weeks of each other during the 2009-2010 reporting year.

212.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of authorized non-storm water discharges in the 2009-2010 Annual Report.

213.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2009-2010 Annual Report that it failed to conduct one observation of all discharge locations each month during the 2009-2010 Wet Season.

214.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct one observation of all discharge locations each month during the 2009-2010 Wet Season.

215.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2009-2010 Annual Report that it failed to conduct visual observations of storm

water discharges during the first hour of discharge for all discharge locations.

216.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations of storm water discharges during the first hour of discharge for all discharge locations during the 2009-2010 Wet Season.

217.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to document the presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor, and source of pollutants for unobserved discharge locations during the 2009-2010 Wet Season.

218.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required records of responses taken to eliminate and reduce pollutant contact with storm water in the 2009-2010 Annual Report.

219.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2009-2010 Annual Report that it failed to collect storm water samples during the first hour of discharge during the 2009-2010 Wet Season.

220.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples during the first hour of discharge during the 2009-2010 Wet Season.

221.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples from all discharge locations during the 2009-2010 Wet Season.

222.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2009-2010 Wet Season by compositing storm water samples collected from discharge locations at the Facility.

223.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2009-2010 Wet Season by failing to analyze storm water samples collected from discharge locations at the Facility for all required parameters.

224.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

Operator failed to conduct an adequate Annual Comprehensive Site Compliance Evaluation in the 2009-2010 reporting year.

225.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required reports of incidents of non-compliance and corrective actions taken in the 2009-2010 Annual Report.

226.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of why the Facility Owner and/or Operator did not implement activities required by the Storm Water Permit the 2009-2010 Annual Report.

227.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator erroneously certified compliance with the Storm Water Permit in the 2009-2010 Annual Report.

### ii.   2010-2011 Annual Report

228.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2010-2011 Annual Report that visual observations for unauthorized non-storm water discharges were conducted for all drainage areas at the Facility.

229.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for unauthorized non-storm water discharges for all drainage areas at the Facility in the 2010-2011 reporting year.

230.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of unauthorized non-storm water discharges in the 2010-2011 Annual Report.

231.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2010-2011 Annual Report that visual observations for authorized non-storm water discharges were conducted for all drainage areas at the Facility.

232.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for authorized non-storm water discharges for all drainage areas at the Facility in the 2010-2011 reporting year.

233.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

Operator failed to include required explanations of failures to conduct required visual observations of authorized non-storm water discharges in the 2010-2011 Annual Report.

234. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2010-2011 Annual Report that it failed to conduct one observation of all discharge locations each month during the 2010-2011 Wet Season.

235. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct one observation of all discharge locations each month during the 2010-2011 Wet Season.

236. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2010-2011 Annual Report that it failed to conduct visual observations of storm water discharges during the first hour of discharge for all discharge locations.

237. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations of storm water discharges during the first hour of discharge for all discharge locations during the 2010-2011 Wet Season.

238. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to document the presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor, and source of pollutants for unobserved discharge locations during the 2010-2011 Wet Season.

239. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required records of responses taken to eliminate and reduce pollutant contact with storm water in the 2010-2011 Annual Report.

240. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2010-2011 Annual Report that it failed to collect storm water samples during the first hour of discharge during the 2010-2011 Wet Season.

241. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples during the first hour of discharge during the 2010-2011 Wet Season.

242. CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

Operator failed to collect storm water samples from all discharge locations during the 2010-2011 Wet Season.

243.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2010-2011 Wet Season by compositing storm water samples collected from the Facility.

244.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2010-2011 Wet Season by failing to analyze storm water samples collected at the Facility for all required parameters.

245.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct an adequate Annual Comprehensive Site Compliance Evaluation in the 2010-2011 reporting year.

246.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required reports of incidents of non-compliance and corrective actions taken in the 2010-2011 Annual Report.

247.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of why the Facility Owner and/or Operator did not implement activities required by the Storm Water Permit the 2010-2011 Annual Report.

248.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator erroneously certified compliance with the Storm Water Permit in the 2010-2011 Annual Report.

### iii. **2011-2012 Annual Report**

249.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2011-2012 Annual Report that visual observations for unauthorized non-storm water discharges were conducted for all drainage areas at the Facility.

250.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for unauthorized non-storm water discharges for all drainage areas at the Facility in the 2011-2012 reporting year.

251.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of unauthorized non-storm water discharges in the 2011-2012 Annual Report.

252.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2011-2012 Annual Report that visual observations for authorized non-storm water discharges were conducted for all drainage areas at the Facility.

253.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for authorized non-storm water discharges for all drainage areas at the Facility in the 2011-2012 reporting year.

254.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of authorized non-storm water discharges in the 2011-2012 Annual Report.

255.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2011-2012 Annual Report that it failed to conduct one observation of all discharge locations each month during the 2011-2012 Wet Season.

256.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct one observation of all discharge locations each month during the 2011-2012 Wet Season.

257.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2011-2012 Annual Report that it failed to conduct visual observations of storm water discharges during the first hour of discharge for all discharge locations.

258.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations of storm water discharges during the first hour of discharge for all discharge locations during the 2011-2012 Wet Season.

259.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to document the presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor, and source of pollutants for unobserved discharge locations during the 2011-2012 Wet Season.

260.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2011-2012 Annual Report that it failed to collect storm water samples from the first storm event of the 2011-2012 Wet Season.

261.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples from the first storm event of the 2011-2012 Wet Season.

262.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2011-2012 Annual Report that it failed to collect storm water samples during the first hour of discharge during the 2011-2012 Wet Season.

263.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples during the first hour of discharge during the 2011-2012 Wet Season.

264.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples from all discharge locations during the 2011-2012 Wet Season.

265.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2011-2012 Wet Season by compositing storm water samples collected from the Facility.

266.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2011-2012 Wet Season by failing to analyze storm water samples collected at the Facility for all required parameters.

267.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct an adequate Annual Comprehensive Site Compliance Evaluation in the 2011-2012 reporting year.

268.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required reports of incidents of non-compliance and corrective actions taken in the 2011-2012 Annual Report.

269.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

Operator failed to include required explanations of why the Facility Owner and/or Operator did not implement activities required by the Storm Water Permit the 2011-2012 Annual Report.

270.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator erroneously certified compliance with the Storm Water Permit in the 2011-2012 Annual Report.

### iv. 2012-2013 Annual Report

271.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2012-2013 Annual Report that visual observations for unauthorized non-storm water discharges were conducted for all drainage areas at the Facility.

272.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for unauthorized non-storm water discharges for all drainage areas at the Facility in the 2012-2013 reporting year.

273.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of unauthorized non-storm water discharges in the 2012-2013 Annual Report.

274.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2012-2013 Annual Report that visual observations for authorized non-storm water discharges were conducted for all drainage areas at the Facility.

275.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for authorized non-storm water discharges for all drainage areas at the Facility in the 2012-2013 reporting year.

276.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of authorized non-storm water discharges in the 2012-2013 Annual Report.

277.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2012-2013 Annual Report that it failed to conduct one observation of all discharge locations each month during the 2012-2013 Wet Season.

278.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

1  Operator reports in the 2012-2013 Annual Report that it failed to conduct one observation of all

2  discharge locations each month during the 2012-2013 Wet Season.

3          279.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

4  Operator failed to conduct one observation of all discharge locations each month during the 2012-2013

5  Wet Season.

6          280.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

7  Operator reports in the 2012-2013 Annual Report that it failed to conduct visual observations of storm

8  water discharges during the first hour of discharge for all discharge locations.

9          281.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

10  Operator failed to conduct visual observations of storm water discharges during the first hour of

11  discharge for all discharge locations during the 2012-2013 Wet Season.

12          282.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

13  Operator failed to document the presence of any floating and suspended material, oil and grease,

14  discolorations, turbidity, odor, and source of pollutants for unobserved discharge locations during the

15  2012-2013 Wet Season.

16          283.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

17  Operator reports in the 2012-2013 Annual Report that it failed to collect storm water samples during the

18  first hour of discharge during the 2012-2013 Wet Season.

19          284.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

20  Operator failed to collect storm water samples during the first hour of discharge during the 2012-2013

21  Wet Season.

22          285.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

23  Operator reports in the 2012-2013 Annual Report that it failed to collect storm water samples from all

24  discharge locations at the Facility.

25          286.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

26  Operator failed to collect storm water samples from all discharge locations during the 2012-2013 Wet

27  Season.

28          287.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

Complaint                                    33

Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2012-2013 Wet Season by failing to analyze storm water samples collected at the Facility for all required parameters.

288.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct an adequate Annual Comprehensive Site Compliance Evaluation in the 2012-2013 reporting year.

289.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required reports of incidents of non-compliance and corrective actions taken in the 2012-2013 Annual Report.

290.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of why the Facility Owner and/or Operator did not implement activities required by the Storm Water Permit the 2012-2013 Annual Report.

291.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator erroneously certified compliance with the Storm Water Permit in the 2012-2013 Annual Report.

**v.   2013-2014 Annual Report**

292.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2013-2014 Annual Report that visual observations for unauthorized non-storm water discharges were conducted for all drainage areas at the Facility.

293.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for unauthorized non-storm water discharges for all drainage areas at the Facility in the 2013-2014 reporting year.

294.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of unauthorized non-storm water discharges in the 2013-2014 Annual Report.

295.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to report in the 2013-2014 Annual Report that visual observations for authorized non-storm water discharges were conducted for all drainage areas at the Facility.

296.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations for authorized non-storm water discharges for all drainage areas at the Facility in the 2013-2014 reporting year.

297.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of failures to conduct required visual observations of authorized non-storm water discharges in the 2013-2014 Annual Report.

298.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2013-2014 Annual Report that it failed to conduct one observation of all discharge locations each month during the 2013-2014 Wet Season.

299.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct one observation of all discharge locations each month during the 2013-2014 Wet Season.

300.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reports in the 2013-2014 Annual Report that it failed to conduct visual observations of storm water discharges during the first hour of discharge for all discharge locations.

301.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct visual observations of storm water discharges during the first hour of discharge for all discharge locations during the 2013-2014 Wet Season.

302.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to document the presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor, and source of pollutants for unobserved discharge locations during the 2013-2014 Wet Season.

303.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples from all discharge locations during the 2013-2014 Wet Season.

304.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2013-2014 Wet Season by compositing storm water samples collected from the Facility.

305.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples as required by the Storm Water Permit during the 2013-2014 Wet Season by failing to analyze storm water samples collected at the Facility for all required parameters.

306.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct an adequate Annual Comprehensive Site Compliance Evaluation in the 2013-2014 reporting year.

307.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required reports of incidents of non-compliance and corrective actions taken in the 2013-2014 Annual Report.

308.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include required explanations of why the Facility Owner and/or Operator did not implement activities required by the Storm Water Permit the 2013-2014 Annual Report.

309.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator erroneously certified compliance with the Storm Water Permit in the 2013-2014 Annual Report.

### vi.  Facility M&RP

310.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately develop a M&RP that complies with the Storm Water Permit.

311.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately implement a M&RP that complies with the Storm Water Permit.

312.    CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately revise the M&RP, despite repeated and significant failures to comply with the Storm Water Permit's monitoring and reporting requirements.

///

///

1  **V.        CLAIMS FOR RELIEF**

2  **FIRST CAUSE OF ACTION**

3  **Defendant's Discharges of Contaminated Storm Water in Violation of the Storm Water Permit's Effluent Limitation B(3) and the Clean Water Act.**
   **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

4

5  313.    CSPA incorporates the allegations contained in the above paragraphs as though fully set

6  forth herein.

7  314.    CSPA is informed and believes, and thereon alleges, that Defendant failed and continues

8  to fail to reduce or prevent pollutants associated with industrial activities at the Facility from discharging

9  from the Facility through implementation of BMPs that achieve BAT/BCT.

10  315.    CSPA is informed and believes, and thereon alleges, that discharges of storm water

11  containing levels of pollutants that do not achieve compliance with BAT/BCT standards from the

12  Facility occur every time storm water discharges from the Facility.

13  316.    The Facility Owner and/or Operator violates and will continue to violate Effluent

14  Limitation B(3) of the Storm Water Permit each and every time storm water containing levels of

15  pollutants that do not achieve BAT/BCT standards discharges from the Facility.

16  317.    CSPA is informed and believes, and thereon alleges, that the Facility Owner's and/or

17  Operator's violations of Effluent Limitation B(3) of the Storm Water Permit and the Clean Water Act

18  are ongoing and continuous.

19  318.    Each and every time the Facility Owner and/or Operator discharges contaminated storm

20  water from the Facility in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate

21  and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

22  319.    By committing the acts and omissions alleged above, the Facility Owner and/or Operator

23  is subject to an assessment of civil penalties for each and every violation of the CWA occurring from

24  April 6, 2010, to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d),

25  1365, and 40 C.F.R. § 19.4.

26  320.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

27  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and

28  the citizens of the State of California, for which harm CSPA has no plain, speedy, or adequate remedy at

law.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth hereafter.

## SECOND CAUSE OF ACTION

**Defendant's Discharges of Contaminated Storm Water in Violation of
Storm Water Permit Receiving Water Limitation C(1) and the Clean Water Act.
33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

321.   CSPA incorporates the allegations contained in the above paragraphs as though fully set forth herein.

322.   CSPA is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that adversely impact human health and/or the environment from the Facility occur each time storm water discharges from the Facility.

323.   CSPA is informed and believes, and thereon alleges, that storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards has discharged and continues to discharge from the Facility each time storm water discharges from the Facility, and that these discharges adversely impact human health and/or the environment.

324.   The Facility Owner and/or Operator violates and will continue to violate Receiving Water Limitation C(1) of the Storm Water Permit each and every time storm water containing levels of pollutants that adversely impact human health and/or the environment discharges from the Facility.

325.   CSPA is informed and believes, and thereon alleges, that the Facility Owner's and/or Operator's violations of Receiving Water Limitation C(1) of the Storm Water Permit and the CWA are ongoing and continuous.

326.   Each and every violation of Receiving Water Limitation C(1) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

327.   By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 6, 2010, to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

328.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm

1  Plaintiff and the citizens of the State of California, for which harm CSPA has no plain, speedy, or

2  adequate remedy at law.

3          WHEREFORE, Plaintiff prays for judgment against Defendant as set forth hereafter.

4                                    **THIRD CAUSE OF ACTION**

5  **Defendant's Discharges of Contaminated Storm Water in Violation of Storm Water Permit
Receiving Water Limitation C(2) and the Clean Water Act.**

6  **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

7          329.    CSPA incorporates the allegations contained in the above paragraph as though fully set

8  forth herein.

9          330.    CSPA is informed and believes, and thereon alleges, that discharges of storm water

10  containing levels of pollutants that cause or contribute to exceedances of water quality standards from

11  the Facility occur each time storm water discharges from the Facility.

12          331.    The Facility Owner and/or Operator violates and will continue to violate Receiving Water

13  Limitation C(2) of the Storm Water Permit each and every time storm water containing levels of

14  pollutants that cause or contribute to exceedances of water quality standards discharges from the

15  Facility.

16          332.    CSPA is informed and believes, and thereon alleges, that the Facility Owner's and/or

17  Operator's violations of Receiving Water Limitation C(2) of the Storm Water Permit and the CWA are

18  ongoing and continuous.

19          333.    Each and every violation of Receiving Water Limitation C(2) of the Storm Water Permit

20  is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

21          334.    By committing the acts and omissions alleged above, the Facility Owner and/or Operator

22  is subject to an assessment of civil penalties for each and every violation of the CWA occurring from

23  April 6, 2010, to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d),

24  1365, and 40 C.F.R. § 19.4.

25          335.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

26  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and

27  the citizens of the State of California, for which harm CSPA has no plain, speedy, or adequate remedy at

28  law.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth hereafter.

**FOURTH CAUSE OF ACTION**

**Defendant's Failure to Adequately Develop, Implement, and/or Revise a Storm Water Pollution Prevention Plan in Violation of Section A and Provision E(2) of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

336.     CSPA incorporates the allegations contained in the above paragraphs as though fully set forth herein.

337.     CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to develop an adequate SWPPP for the Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

338.     CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately implement a SWPPP for the Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

339.     CSPA is informed and believes, and thereon alleges, that Facility Owner and/or Operator has failed and continues to fail to adequately revise a SWPPP for the Facility, in violation of Sections A(9) and A(10) of the Storm Water Permit.

340.     The Facility Owner and/or Operator has been in violation of Section A and Provision E(2) of the Storm Water Permit at the Facility every day from April 6, 2010, to the present.

341.     The Facility Owner's and/or Operator's violations of Section A and Provision E(2) of the Storm Water Permit and the CWA at the Facility are ongoing and continuous.

342.     The Facility Owner and/or Operator will continue to be in violation of Section A and Provision E(2) of the Storm Water Permit and the CWA each and every day the Facility Owner and/or Operator fails to adequately develop, implement, and/or revise the SWPPP for the Facility.

343.     Each and every violation of the Storm Water Permit's SWPPP requirements at the Facility is a separate and distinct violation of the CWA.

344.     By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 6, 2010, to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d),

1   1365, and 40 C.F.R. § 19.4.

2   345.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

3   Continuing commission of the acts and omissions alleged above would irreparably harm CSPA and the

4   citizens of the State of California, for which harm CSPA has no plain, speedy, or adequate remedy at

5   law.

6   WHEREFORE, Plaintiff prays for judgment against the Defendant as set forth hereafter.

7   **FIFTH CAUSE OF ACTION**

8   **Defendant's Failure to Adequately Develop, Implement, and/or Revise a Monitoring and
Reporting Program in Violation of the Storm Water Permit and the Clean Water Act.**

9   **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

10   346.   CSPA incorporates the allegations contained in the above paragraphs as though fully set

11   forth herein.

12   347.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

13   Operator has failed and continues to fail to develop an adequate M&RP for the Facility, in violation of

14   Section B and Provision E(3) of the Storm Water Permit.

15   348.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

16   Operator has failed and continues to fail to adequately implement an M&RP for the Facility, in violation

17   of Section B and Provision E(3) of the Storm Water Permit.

18   349.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

19   Operator has failed and continues to fail to adequately revise an M&RP for the Facility, in violation of

20   Section B and Provision E(3) of the Storm Water Permit.

21   350.   The Facility Owner and/or Operator has been in violation of the Section B and Provision

22   E(3) of the Storm Water Permit at the Facility every day from April 6, 2010, to the present.

23   351.   The Facility Owner's and/or Operator's violations of Section B and Provision E(3) of the

24   Storm Water Permit and the CWA at the Facility are ongoing and continuous.

25   352.   The Facility Owner and/or Operator will continue to be in violation of Section B and

26   Provision E(3) the Storm Water Permit and the CWA each and every day it fails to adequately develop,

27   implement, and/or revise an M&RP for the Facility.

28   353.   Each and every violation of the Storm Water Permit's M&RP requirements at the Facility

Complaint                                    41

1    is a separate and distinct violation of the CWA.

2    354.   By committing the acts and omissions alleged above, the Facility Owner and/or Operator

3    is subject to an assessment of civil penalties for each and every violation of the CWA occurring from

4    April 6, 2010, to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d),

5    1365, and 40 C.F.R. § 19.4.

6    355.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

7    Continuing commission of the acts and omissions alleged above would irreparably harm CSPA and the

8    citizens of the State of California, for which harm CSPA has no plain, speedy, or adequate remedy at

9    law.

10   WHEREFORE, Plaintiff prays for judgment against the Defendant as set forth hereafter.

11   **SIXTH CAUSE OF ACTION**

12   **Defendant's Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.**

13   **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

14   356.   CSPA incorporates the allegations contained in the above paragraphs as though fully set

15   forth herein.

16   357.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

17   Operator has failed and continues to fail to submit accurate Annual Reports to the Regional Board, in

18   violation of Sections B(14), C(9), and C(10) of the Storm Water Permit.

19   358.   CSPA is informed and believes, and thereon alleges, that the Facility Owner's and/or

20   Operator's Annual Reports failed and continue to fail to meet the monitoring and reporting requirements

21   of the Storm Water Permit, in violation of Section B(14) of the Storm Water Permit.

22   359.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

23   Operator has failed and continues to fail to submit complete Annual Reports to the Regional Board, in

24   violation of Sections B(14), C(9), C(10) and C(11) of the Storm Water Permit.

25   360.   CSPA is informed and believes, and thereon alleges, that the Facility Owner and/or

26   Operator has failed and continues to fail to report its non-compliance with the Storm Water Permit in its

27   Annual Reports to the Regional Board, in violation of Sections B(14), C(9), C(10) and C(11) of the

28   Storm Water Permit.

Complaint                                    42

361.    The Facility Owner and/or Operator has been in violation of Sections B(14), C(9), C(10), and/or C(11) of the Storm Water Permit and CWA every day since at least April 6, 2010.

362.    The Facility Owner's and/or Operator's violations of the reporting requirements of the Storm Water Permit and the CWA are ongoing and continuous.

363.    By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 6, 2010, to the present, pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

364.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm CSPA and the citizens of the State of California, for which harm CSPA has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against the Defendant as set forth hereafter.

## VI.        RELIEF REQUESTED

365.    Plaintiff respectfully requests that this Court grant the following relief:

a.      A Court order declaring Defendant to have violated and to be in violation of the Storm Water Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a), 1342(p), for its discharges of pollutants not in compliance with the Storm Water Permit and its violations of the substantive and procedural requirements of the Storm Water Permit;

b.      A Court order enjoining Defendant from violating the substantive and procedural requirements of the Storm Water Permit;

c.      A Court order requiring Defendant to develop and implement affirmative injunctive measures to eliminate Defendant's violations of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

d.      A Court order assessing civil monetary penalties for each violation of the CWA at $37,500 per day per violation for violations occurring since April 6, 2010, as permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

e.      A Court order awarding Plaintiff its reasonable costs of suit, including attorney, witness,

Complaint                                    43

1  expert, and consultant fees, as permitted by section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d);

2  and

3         f.       Any other relief as this Court may deem appropriate.

4

5  Dated: April 6, 2015                        Respectfully submitted,

6                                             LAWYERS FOR CLEAN WATER, INC.

7

8

9                                           Caroline Koch

10                                           Attorney for Plaintiff
                                         California Sportfishing Protection Alliance

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**



February 3, 2015

**VIA CERTIFIED MAIL**

A.L. Gilbert Company
Managing Agent
304 North Yosemite Avenue
Oakdale, California 95361

 **VIA UNITED STATES MAIL**

Michael D. Schonhoff
Registered Agent for A.L. Gilbert Company
304 North Yosemite Avenue
Oakdale, California 95361

**Re:    Notice of Violation and Intent to File Suit Under the Clean Water Act**

To Whom It May Concern:

I am writing on behalf of California Sportfishing Protection Alliance ("CSPA") regarding violations of the Clean Water Act[1] and California's General Industrial Storm Water Permit[2] occurring at the A.L. Gilbert Company facility with its main address at 304 North Yosemite Avenue, Oakdale, California 95361 (hereinafter the "A.L. Gilbert Facility" or "Facility"). The purpose of this letter is to put the owners and operators of the A.L. Gilbert Facility on notice of the violations of the Storm Water Permit that have occurred, and continue to occur, at the Facility including, but not limited to, the discharges of polluted storm water from the Facility into local water bodies. Violations of the Storm Water Permit are violations of the Clean Water Act. As explained below, the owner(s) and/or operator(s) of the A.L. Gilbert Facility are liable for violations of the Storm Water Permit and the Clean Water Act.

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit").

Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), a citizen must give notice of his/her intention to sue. Notice must be given to the alleged violator, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Officer of the water pollution control agency in the State in which the violations occur, and, if the alleged violator is a corporation, the registered agent of the corporation. *See* 40 C.F.R. § 135.2. This letter is being sent to you as the A.L. Gilbert Facility owner and/or operator, or as the registered agent for this entity. By this letter, issued pursuant to 33 U.S.C. §§ 1365(a) and (b) of the Clean Water Act, CSPA puts the Facility owner and/or operator on notice that after the expiration of sixty (60) days from the date of this letter, we intend to file an enforcement action in federal court for violations of the Storm Water Permit and the Clean Water Act at the Facility.

## I.     Background.

### A.     California Sportfishing Protection Alliance.

CSPA is a 501(c)(3) non-profit public benefit conservation and research organization. CSPA was established in 1983 for the purpose of conserving, restoring, and enhancing the state's water quality, wildlife, fishery resources, aquatic ecosystems, and associated riparian habitats. CSPA accomplishes its mission by actively seeking federal, state, and local agency implementation of environmental regulations and statutes and routinely participates in administrative, legislative, and judicial proceedings. When necessary, CSPA directly initiates enforcement actions on behalf of itself and its members to protect public trust resources. CSPA's office is located at 3536 Rainier Avenue, Stockton, California 95204.

The owners and/or operators of the A.L. Gilbert Facility have discharged, and continue to discharge, polluted storm water to the Stanislaus River, which flows to the San Joaquin River and then to the Sacramento-San Joaquin River Delta ("Delta") (collectively "Receiving Waters"). The Facility's discharges of polluted storm water degrade water quality and harm aquatic life in the Receiving Waters. Members of CSPA live, work, and/or recreate near the Receiving Waters. For example, CSPA members use and enjoy the Receiving Waters for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, and engaging in scientific study. The unlawful discharge of pollutants from the A.L. Gilbert Facility impairs each of these uses. Further, the Facility's discharges of polluted storm water are ongoing and continuous. As a result, CSPA's members' use and enjoyment of the Receiving Waters has been and continues to be adversely impacted. Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by the failure of the Facility owner and/or operator to comply with the Storm Water Permit and the Clean Water Act.

### B.     The Owner and/or Operator of the A.L. Gilbert Facility.

Information available to CSPA indicates that the A.L. Gilbert Company is an active corporation registered to operate in California since 1975. Information available to CPSA indicates that the A.L. Gilbert Company has been an owner and/or operator of the Facility since at least 1992. The A.L. Gilbert Company will herein be referred to as the A.L. Gilbert Facility

Owner and/or Operator.

The Registered Agent for A.L. Gilbert Company is Michael D. Schonhoff located at 304 North Yosemite Avenue, Oakdale, California 95361.

### C.     The A.L. Gilbert Facility's Coverage Under the Storm Water Permit.

A Notice of Intent ("NOI") to obtain Storm Water Permit coverage for dairy feed manufacturing, vehicle maintenance, material storage, and trucking at the A.L. Gilbert Facility was first submitted to the State Water Resources Control Board ("State Board") on March 25, 1992. The NOI lists the facility address as 304 N. Yosemite Avenue, Oakdale, California 95361. The NOI describes the facility as consisting of approximately 7 acres 64% of which is impervious. Upon receipt of the NOI, the State Board assigned the Facility Waste Discharger Identification number 5S50I001719.

The NOI lists the Standard Industrial Classification ("SIC") codes for the A.L. Gilbert Facility as 2048 (prepared feeds manufacturing) and 4212 (local trucking without storage). The Storm Water Permit regulates SIC code 2048 facilities where industrial materials, equipment, or activities are exposed to storm water. *See* Storm Water Permit, Attachment 1, ¶ 10. The Storm Water Permit regulates SIC code 4212 facilities which have vehicle maintenance shops and equipment cleaning operations, and the portions of the facilities involved in vehicle maintenance (including vehicle rehabilitation, mechanical repairs, painting, fueling, and lubrication) or other operations identified in the Storm Water Permit as associated with industrial activities. *See* Storm Water Permit, Attachment 1, ¶ 8.

### D.     Storm Water Pollution and Its Impacts on the Sacramento-San Joaquin Delta Watershed.

With every significant rainfall event, millions of gallons of polluted rainwater, originating from industrial facilities such as the A.L. Gilbert Facility, pour into storm drains and surface waters in California. The consensus among agencies and water quality specialists is that storm water pollution accounts for more than half of the total pollution entering surface waters each year. This discharge of pollutants, which includes discharges from industrial facilities, contributes to the impairment of downstream waters and aquatic dependent wildlife.

Polluted storm water discharges from prepared feed manufacturing and trucking facilities can carry pollutants such as: total suspended solids ("TSS"); total organic compounds ("TOC"); pH-affecting substances; biological oxygen demand ("BOD"); oil and grease ("O&G"); antifreeze; and heavy metals, including arsenic, cadmium, chromium, copper, cobalt, iron, lead, magnesium, and zinc. Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and developmental or reproductive harm. Polluted storm water discharges to surface waters pose carcinogenic and reproductive toxicity threats to the public and adversely affect the aquatic environment.

The California Regional Water Quality Control Board, Central Valley Region ("Regional Board") has issued its Water Quality Control Plan for the Sacramento and San Joaquin River

Basins ("Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The Beneficial Uses for the waters that receive polluted storm water discharges from the A.L. Gilbert Facility include: Municipal and Domestic Supply, Agricultural Supply, Industrial Processes Supply, Industrial Service Supply, Water Contact Recreation, Non-contact Water Recreation, Warm Freshwater Habitat, Cold Freshwater Habitat, Migration, Spawning, Wildlife Habitat, Navigation. *See* Basin Plan at Table II-1.

A water body is impaired pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d), when its Beneficial Uses are not being achieved due to the presence of one or more pollutants. Downstream of the Facility, the Stanislaus River is impaired by temperature, unknown toxicity, and mercury, among other pollutants.[3] Downstream of the A.L. Gilbert Facility, the Delta is impaired by, among other things, various pesticides, mercury, and unknown toxicity.[4] Polluted storm water discharges from industrial facilities, such as the A.L. Gilbert Facility, contribute to the impairment of surface waters, including the Receiving Waters, and harm aquatic dependent wildlife.

### E.   The Industrial Activities at the A.L. Gilbert Facility and Associated Pollutants.

As reported by the A.L. Gilbert Facility Owner and/or Operator, the Facility consists of the North Mill and the South Mill, which include the following: grain truck load-out area; grain unloading area; stored bulk oil location; vehicle maintenance shop; operations building; grain bagging building; mixing room; liquid storage tanks; exterior mineral and chemical storage areas; a truck washing location; truck parking locations; and boiler room.

Information available to CSPA indicates that the following industrial operations are conducted at the Facility: dairy feed manufacturing; material handling and storage; vehicle maintenance; equipment cleaning; and vehicle and equipment storage. Information available to CSPA indicates that these activities are exposed to storm water. Information available to CSPA also indicates that the A.L. Gilbert Facility Owner and/or Operator conducts activities related to vehicle maintenance and equipment cleaning throughout the Facility.

Each of these areas, locations, activities, or materials is a potential source of pollutants at the Facility. Information available to CSPA indicates that many, if not all, of the industrial operations and associated material storage at the Facility are conducted outdoors without adequate cover or other effective best management practices ("BMPs") to prevent storm water exposure to pollutant sources, and without adequate secondary containment or other measures to prevent polluted storm water from discharging from the Facility.

---

[3] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on January 15, 2015).

[4] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on January 15, 2015).

The pollutants associated with operations at the A.L. Gilbert Facility include, but are not limited to: TSS; TOC; pH-affecting substances; BOD; O&G; antifreeze; and heavy metals, including arsenic, cadmium, chromium, copper, cobalt, iron, lead, magnesium, and zinc.

Information available to CSPA also indicates that the pollutants and pollutant sources identified above have been and continue to be deposited in and around and/or tracked throughout the Facility. Pollutants accumulate at the storm water discharge points and drop inlets to the onsite storm drain system. They also accumulate at and on the driveways to Yosemite Avenue, resulting in the discharge of pollutants at the driveways as well as tracking of sediment, dirt, oil and grease, metal particles and other pollutants off-site.

**F.** **The A.L. Gilbert Facility's Failure to Implement BMPs and Associated Discharges of Pollutants.**

Information available to CSPA indicates that there are at least 15 storm water discharge locations at the Facility. Based on the A.L. Gilbert Facility Owner's and/or Operator's reporting, eight of these discharge locations are designated storm water sampling locations, as follows: North Mill #1, North Mill #2, North Mill #3, North Mill #5, South Mill #1, South Mill #2, South Mill #3, and South Mill #4.

The A.L. Gilbert Facility Owner and/or Operator has not properly developed and/or implemented the required BMPs to address pollutant sources, prevent the exposure of pollutants to storm water, and prevent the subsequent discharge of polluted storm water from the Facility during rain events. Consequently, during rain events, storm water carries pollutants from the Facility's uncovered and exposed areas of industrial activity into the Receiving Waters. These discharges negatively impact the Receiving Waters and CSPA's members' use and enjoyment of the Receiving Waters.

The A.L. Gilbert Facility Owner's and/or Operator's failure to develop and/or implement BMPs required by the Storm Water Permit to reduce or eliminate pollutant levels in discharges is also documented by the Regional Board. Information available to CSPA indicates that the Regional Board issued its first notification of inadequate BMPs to the A.L. Gilbert Facility Owner and/or Operator in October 2009 based on high levels of pollutants in the Facility's storm water discharges during the 2008/2009 Wet Season. Specifically, the Regional Board put the A.L. Gilbert Facility Owner and/or Operator on notice that the BMPs and general storm water management at the Facility must be improved. The A.L. Gilbert Facility Owner and/or Operator responded on November 18, 2009, indicating improvements would be made throughout the next Wet Season, and that the Storm Water Pollution Prevention Plan ("SWPPP") would be updated.

Via letter dated October 14, 2010, the Regional Board again informed the A.L. Gilbert Facility Owner and/or Operator that levels of pollutants in discharges from the Facility indicate that BMPs implemented at the Facility are not sufficient, and required the A.L. Gilbert Facility Owner and/or Operator to modify its BMPs. In its November 9, 2010, response the A.L. Gilbert Facility Owner and/or Operator stated that: (1) BMPs at the Facility were not fully implemented, (2) the previously revised SWPPP had not been in effect until March 2010, and (3) it believed the next year's sample results would show improvement.

Notice of Violation and Intent to File Suit
Case 1:15-cv-00523-DAD-SKO   Document 1   Filed 04/06/15   Page 51 of 76
February 3, 2015
Page 6 of 13

As excessive concentrations of pollutants in the Facility's storm water discharges continued into the next Wet Season, the Regional Board issued a California Water Code section 13267 Order dated March 16, 2012, informing the A.L. Gilbert Facility Owner and/or Operator that concentrations of pollutants in discharges from the Facility continue to demonstrate that current BMPs are insufficient and that modifications are required. The 13267 Order required the A.L. Gilbert Facility Owner and/or Operator to review past sampling data, annual reporting, and current BMPs, and modify existing BMPs and/or implement new BMPs to reduce or eliminate the discharge of pollutants as necessary to comply with the Storm Water Permit. The 13267 Order also required the A.L. Gilbert Facility Owner and/or Operator to submit a written response by April 23, 2012, along with a revised SWPPP and M&RP for the Facility that addressed the exceedances and Storm Water Permit violations. The A.L. Gilbert Facility Owner and/or Operator responded by the deadline, repeating its claims that BMPs were being improved, that BMP implementation would be completed by May 16, 2012, and that future sample results would show reduction in pollutant levels.

## II.   Violations of the Clean Water Act and the Storm Water Permit.

In California, any person who discharges storm water associated with industrial activity must comply with the terms of the Storm Water Permit in order to lawfully discharge pollutants. *See* 33 U.S.C. §§ 1311(a), 1342; 40 C.F.R. § 122.26(c)(1); *see also* Storm Water Permit, Fact Sheet at VII.

### A.   Discharges of Polluted Storm Water from the A.L. Gilbert Facility in Violation of Effluent Limitation B(3) of the Storm Water Permit.

Effluent Limitation B(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges through implementation of BMPs that achieve best available technology economically achievable ("BAT") for toxic pollutants[5] and best conventional pollutant control technology ("BCT") for conventional pollutants.[6]  Benchmark Levels are relevant and objective standards to evaluate whether a permittee's BMPs achieve compliance with BAT/BCT standards as required by Effluent Limitation B(3) of the Storm Water Permit.[7]

Sampling at the A.L. Gilbert Facility establishes the repeated and significant exceedances of Benchmark Levels, which demonstrates that the A.L. Gilbert Facility Owner and/or Operator has not implemented BMPs at the Facility that achieve compliance with the BAT/BCT standards. *See* Exhibit A. The A.L. Gilbert Facility Owner and/or Operator has failed and continues to fail to develop and/or implement BMPs to prevent the exposure of pollutants to storm water and to prevent discharges of polluted storm water from the Facility, in violation of Effluent Limitation B(3) of the Storm Water Permit.

---

[5] Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.
[6] Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand, total suspended solids, oil and grease, pH, and fecal coliform.
[7] *See* EPA Storm Water Multi-Sector Permit (2008), Fact Sheet, p. 106; *see also*, EPA Storm Water Multi-Sector Permit, 65 Federal Register 64839 (2000).

Information available to CSPA indicates that the A.L. Gilbert Facility Owner and/or Operator violates Effluent Limitation B(3) of the Storm Water Permit for failing to develop and/or implement BMPs that achieve BAT/BCT each time storm water is discharged from the Facility. *See e.g.*, Exhibit B (setting forth dates of significant rain events at the Facility).[8] These discharge violations are ongoing and will continue each day the A.L. Gilbert Facility Owner and/or Operator discharges polluted storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards. CSPA will update the number and dates of violation when additional information and data becomes available. Each time the A.L. Gilbert Facility Owner and/or Operator discharge polluted storm water in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). The A.L. Gilbert Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since February 3, 2010.

**B.**     **Discharges of Polluted Storm Water in Violation of Receiving Water Limitations C(1) and C(2) of the Storm Water Permit.**

Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges and authorized non-stormwater discharges to surface water or ground water that adversely impact human health or the environment. Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment constitute violations of Receiving Water Limitation C(1) of the Storm Water Permit and the Clean Water Act. Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges and authorized non-stormwater discharges that cause or contribute to an exceedance of an applicable water quality standard ("WQS").[9] Discharges that contain pollutants in excess of an applicable WQS violate Receiving Water Limitation C(2) of the Storm Water Permit and the Clean Water Act.

Information available to CSPA indicates that the Facility's storm water discharges contain elevated concentrations of pollutants, including but not limited to BOD, copper, and zinc, which can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters. Discharges of elevated concentrations of pollutants in the storm water from the Facility also adversely impact human health. These harmful discharges from the A.L. Gilbert Facility are violations of Receiving Water Limitation C(1).

---

[8] Dates of significant rain events from February 2010 to April 2011 are measured at the Goodwin Tunnel Rain Gauge, as information prior to May 2011 is unavailable for the Oakdale Weather Station. Dates of significant rain events from May 2011 to December 2014 are measured at the Oakdale Weather Station. A significant rain event is defined by EPA as a rainfall event generating 0.1 inches or more of rainfall, which generally results in discharges at a typical industrial facility.

[9] As explained above in Section I.D, the Basin Plan designates Beneficial Uses for the Receiving Waters. Water quality standards are pollutant concentration levels determined by the state or federal agencies to be protective of designated Beneficial Uses. Discharges above water quality standards contribute to the impairment of the Receiving Waters' Beneficial Uses. Applicable water quality standards include, among others, the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"), and the water quality objectives in the Basin Plan.

Information available to CSPA further indicates that the Facility's storm water discharges contain concentrations of pollutants that cause or contribute to an exceedance of applicable WQSs, in violation of Receiving Water Limitation C(2). *See, e.g.,* Exhibit A. Storm water discharges from the Facility that cause or contribute to exceedances of WQSs are violations of Receiving Water Limitation C(2).

Information available to CSPA indicates that the storm water discharges from the A.L. Gilbert Facility violate Receiving Water Limitations C(1) and/or C(2) each time storm water is discharged from the Facility. These violations are ongoing, and will continue each time contaminated storm water is discharged in violation of the Receiving Water Limitation C(1) and/or C(2) of the Storm Water Permit. Each time discharges of storm water from the Facility adversely impact human health or the environment is a separate and distinct violation of Receiving Water Limitation C(1) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). Each time discharges of storm water from the Facility cause or contribute to a violation of an applicable WQS is a separate and distinct violation of Receiving Water Limitation C(2) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). CSPA will update the number and dates of violation when additional information becomes available. The A.L. Gilbert Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since February 3, 2010.

**C.**   **Failure to Develop, Implement, and/or Revise an Adequate Storm Water Pollution Prevention Plan.**

Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to have developed and implemented a SWPPP by October 1, 1992, or prior to beginning industrial activities, that meets all of the requirements of the Storm Water Permit. The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges from the Facility, and to implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. *See* Storm Water Permit, Section A(2). These BMPs must achieve compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. To ensure compliance with the Storm Water Permit, the SWPPP must be evaluated on an annual basis pursuant to the requirements of Section A(9), and must be revised as necessary to ensure compliance with the Storm Water Permit. *Id.*, Sections A(9) and (10).

Sections A(3) – A(10) of the Storm Water Permit set forth the requirements for a SWPPP. Among other requirements, the SWPPP must include: a site map showing the facility boundaries, storm water drainage areas with flow patterns, nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, areas of actual and potential pollutant contact, and areas of industrial activity (*see* Storm Water Permit, Section A(4)); a list of significant materials handled and stored at the site (*see* Storm Water Permit, Section A(5)); a description of potential pollutant sources, including industrial processes, material handling and storage areas, dust and particulate generating activities, significant spills and leaks, non-stormwater discharges and their sources, and locations where soil erosion may occur (*see* Storm Water Permit, Section A(6)). Sections A(7) and A(8) of the Storm Water Permit require an assessment of potential pollutant sources at the facility and a description of the

BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-stormwater discharges, including structural BMPs where non-structural BMPs are not effective.

Information available to CSPA indicates that A.L. Gilbert Facility Owner and/or Operator has been conducting operations at the Facility with an inadequately developed and/or implemented SWPPP. For example, the A.L. Gilbert Owner and/or Operator failed to revise its SWPPP within ninety (90) days of notice that it is inadequate (*see* Storm Water Permit, Section A(10)(d)), and failed to submit a notification to the Regional Board within fourteen (14) days of implementing the SWPPP revisions, as required by Section A(10)(b) of the Storm Water Permit. In addition, the A.L. Gilbert Facility Owner and/or Operator failed to create and/or revise a site map that includes all the information required by Section A(4) of the Storm Water Permit. The A.L. Gilbert Facility Owner and/or Operator has also failed and continues to fail to develop and/or implement a SWPPP that contains BMPs to prevent the exposure of pollutant sources to storm water and the subsequent discharge of polluted storm water from the Facility, as required by the Storm Water Permit. Further, the A.L. Gilbert Facility Owner's and/or Operator's technical reports and responses to the Regional Board's notices of inadequate BMPs, which date back to 2009, acknowledge that BMPs identified in the SWPPPs for the Facility are insufficient and/or have not been fully implemented. The ongoing nature of the SWPPP inadequacies are documented by inadequate storm water management and the continuous and ongoing discharge of storm water containing pollutant levels in violation of the Storm Water Permit, including in the 2013/2014 Wet Season. *See, e.g.,* Exhibit A.

The A.L. Gilbert Facility Owner and/or Operator has failed to adequately develop, implement, and/or revise a SWPPP, in violation of Section A and Provision E(2) of the Storm Water Permit. Every day the Facility operates with an inadequately developed, implemented, and/or properly revised SWPPP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The A.L. Gilbert Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's SWPPP requirements since at least February 3, 2010. These violations are ongoing, and CSPA will include additional violations when information becomes available. The A.L. Gilbert Facility Owner and/or Operator are subject to civil penalties for all violations of the Clean Water Act occurring since February 3, 2010.

### D. Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program.

Section B(1) and Provision E(3) of the Storm Water Permit require facility operators to develop and implement an adequate M&RP by October 1, 1992, or prior to the commencement of industrial activities at a facility, that meets all of the requirements of the Storm Water Permit. The primary objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* Storm Water Permit, Section B(2). The M&RP must therefore ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility, and must be evaluated and revised whenever appropriate to ensure compliance with the Storm Water Permit. *Id.*

Sections B(3) – B(16) of the Storm Water Permit set forth the M&RP requirements. Specifically, Section B(3) requires dischargers to conduct quarterly visual observations of all drainage areas within their facility for the presence of authorized and unauthorized non-stormwater discharges. Section B(4) requires dischargers to conduct visual observations of storm water discharges from one storm event per month during the Wet Season. Sections B(3) and B(4) further require dischargers to document the presence of any floating or suspended material, oil and grease, discolorations, turbidity, odor, and the source of any pollutants. Dischargers must maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-stormwater discharges and to reduce or prevent pollutants from contacting non-stormwater and storm water discharges. *See* Storm Water Permit, Sections B(3) and B(4). Dischargers must also revise the SWPPP in response to these observations to ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility. *Id.*, Section B(4).

Sections B(5) and B(7) of the Storm Water Permit require dischargers to collect samples of storm water from all locations where storm water is discharged. Storm water samples must be analyzed for TSS, pH, specific conductance, total organic carbon or oil and grease, and other pollutants that are likely to be present in the facility's discharges in significant quantities. *See* Storm Water Permit, Section B(5)(c). Pollutants that are likely to be present in the Facility's discharges in significant quantities include, but are not limited to, cobalt, copper, iron, magnesium, and zinc. *See* April 2012 SWPPP at pp. 4-5; *see also* Ex. A.

Information available to CSPA, including review of Annual Reports, indicates that the A.L. Gilbert Facility Owner and/or Operator has been conducting operations at the Facility with an inadequately developed and/or implemented M&RP, and has failed to revise the M&RP as required by the Storm Water Permit. For example, in each of the past five wet seasons, the A.L. Gilbert Facility Owner and/or Operator has failed to conduct visual observations for non-storm water discharges or storm water discharges at each discharge location and/or has failed to document such visual observations.

The A.L. Gilbert Facility Owner and/or Operator is also not collecting or analyzing samples as required by the Storm Water Permit. For example, for each of the past five wet seasons, except in the 2012-2013 wet season, the A.L. Gilbert Facility Owner and/or Operator has failed to collect storm water samples from all discharge locations, and has composited samples that were collected. The Permit requires permittees to collect samples from all discharge locations and does not allow for composite sampling. During the 2013-2014 wet season, the A.L. Gilbert Facility Owner and/or Operator failed to collect storm water samples from at least two rain events though more than one significant rain event occurred at the Facility in that time period. *See* Exhibit B. In addition, for each of the past five wet seasons the A.L. Gilbert Facility Owner and/or Operator has failed to analyze storm water samples from the Facility for contaminants likely to be present in significant quantities, as the A.L. Gilbert Facility Owner and/or Operator has failed to analyze some or all storm water samples for at least arsenic, BOD, cadmium, chromium, cobalt, copper, iron, lead, magnesium, and/or zinc. These failures to comply with the Storm Water Permit's requirements demonstrate the inadequacies of the M&RP and the failure to properly implement the M&RP at the Facility.

The A.L. Gilbert Facility Owner's and/or Operator's failure to conduct sampling, monitoring, and reporting as required by the Storm Water Permit demonstrates that it has failed to develop, implement, and/or revise an M&RP that complies with the requirements of Section B and Provision E(3) of the Storm Water Permit. Every day that the A.L. Gilbert Facility Owner and/or Operator conducts operations in violation of the specific monitoring and reporting requirements of the Storm Water Permit, or with an inadequately developed and/or implemented M&RP, is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The A.L. Gilbert Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's M&RP requirements every day since at least February 3, 2010. These violations are ongoing, and CSPA will include additional violations when information becomes available. The A.L. Gilbert Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since February 3, 2010.

**E.     Failure to Comply with the Storm Water Permit's Reporting Requirements.**

Section B(14) of the Storm Water Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. Section B(14) requires that the Annual Report include a summary of visual observations and sampling results, an evaluation of the visual observation and sampling results, the laboratory reports of sample analysis, the annual comprehensive site compliance evaluation report, an explanation of why a permittee did not implement any activities required, and other information specified in Section B(13).

Since at least the 2009/2010 Annual Report, the A.L. Gilbert Facility Owner and/or Operator has failed to submit Annual Reports that comply with the Storm Water Permit reporting requirements, including filing incomplete Annual Reports that do not provide the information required by the Storm Water Permit. For example, each Annual Report indicates that: (1) a complete Annual Comprehensive Site Compliance Evaluation was done pursuant to Section A(9) of the Storm Water Permit; (2) the SWPPP's BMPs address existing potential pollutant sources; and (3) the SWPPP complies with the Storm Water Permit, or will otherwise be revised to achieve compliance. However, information available to CSPA, including a review of the Regional Board's files and the Facility storm water sampling data, indicates that these certifications by the A.L. Gilbert Facility Owner and/or Operator are erroneous, because it has not developed and/or implemented adequate BMPs or adequately revised and/or implemented the SWPPP, resulting in the ongoing discharge of storm water containing pollutant levels in violation of the Storm Water Permit limitations. In fact, Annual Reports document the need for additional BMPs, or improvements to current BMPs, yet the compliance certifications note all required BMPs are in place and working as intended.

Information available to CSPA indicates that the A.L. Gilbert Facility Owner and/or Operator has submitted incomplete and/or incorrect Annual Reports that fail to comply with the Storm Water Permit. As such, the A.L. Gilbert Facility Owner and/or Operator is in daily violation of the Storm Water Permit. Every day the A.L. Gilbert Facility Owner and/or Operator conducts operations at the Facility without reporting as required by the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). The A.L. Gilbert Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's reporting requirements every day since at least

Notice of Violation and Intent to File Suit
Case 1:15-cv-00523-DAD-SKO Document 1 Filed 04/06/15 Page 57 of 76
February 3, 2015
Page 12 of 13

February 3, 2010. These violations are ongoing. The A.L. Gilbert Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since February 3, 2010.

### III.    Relief and Penalties Sought for Violations of the Clean Water Act.

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five years prior to the date of a notice of intent to file suit letter. These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations. In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. §1365(a) and (d), declaratory relief, and such other relief as permitted by law. Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), CSPA will seek to recover its costs, including attorneys' and experts' fees, associated with this enforcement action.

### IV.    Conclusion.

Upon expiration of the 60-day notice period, CSPA will file a citizen suit under Section 505(a) of the Clean Water Act for the A.L. Gilbert Facility Owner's and/or Operator's violations of the Storm Water Permit. During the 60-day notice period, however, CSPA is willing to discuss effective remedies for the violations noted in this letter. If you wish to pursue such discussions please contact CSPA's legal counsel as listed below.

> Drevet Hunt
>     drev@lawyersforcleanwater.com
> Caroline Koch
>     caroline@lawyersforcleanwater.com
> Lawyers for Clean Water, Inc.
> 1004-A O'Reilly Avenue
> San Francisco, California 94129
> Tel: (415) 440-6520

Sincerely,

Bill Jennings, Executive Director
California Sportfishing Protection Alliance

# SERVICE LIST

Eric H. Holder, Jr.
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Gina McCarthy
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Thomas Howard
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Jared Blumenfeld
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

Pamela Creedon
Executive Officer
Central Valley Regional Water Quality Control Board
11020 Sun Center Drive #200
Rancho Cordova, California 95670-6114

**Exhibit A**

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| | | | | **2009/2010 Wet Season** | | | | |
| 11/20/09 0:00 | Aluminum Total | SP-1 | 7.76 | mg/L | 0.75 | 10.35 | none | N/A |
| 11/20/09 0:00 | Electrical Conductivity @ 25 Deg. C | SP-1 | 182 | umhos/cm | 200 | 0 | none | N/A |
| 11/20/09 0:00 | Iron Total | SP-1 | 9.29 | mg/L | 1 | 9.29 | 0.3 | 30.97 |
| 11/20/09 0:00 | Nitrite Plus Nitrate (as N) | SP-1 | 1.95 | mg/L | 0.68 | 2.87 | none | N/A |
| 11/20/09 0:00 | Oil and Grease | SP-1 | <10 | mg/L | 15 | 0 | none | N/A |
| 11/20/09 0:00 | pH | SP-1 | 9.17 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0.67 |
| 11/20/09 0:00 | Total Suspended Solids (TSS) | SP-1 | 199 | mg/L | 100 | 1.99 | none | N/A |
| 11/20/09 0:00 | Zinc Total | SP-1 | 6.45 | mg/L | 0.11 | 58.64 | 0.12 | 53.75 |
| 11/20/09 0:00 | Aluminum Total | DP-2 | 0.492 | mg/L | 0.75 | 0 | none | N/A |
| 11/20/09 0:00 | Electrical Conductivity @ 25 Deg. C | DP-2 | 53.5 | umhos/cm | 200 | 0 | none | N/A |
| 11/20/09 0:00 | Iron Total | DP-2 | 1.03 | mg/L | 1 | 1.03 | 0.3 | 3.43 |
| 11/20/09 0:00 | Nitrite Plus Nitrate (as N) | DP-2 | 0.375 | mg/L | 0.68 | 0 | none | N/A |
| 11/20/09 0:00 | Oil and Grease | DP-2 | <10 | mg/L | 15 | 0 | none | N/A |
| 11/20/09 0:00 | pH | DP-2 | 7.62 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 11/20/09 0:00 | Total Suspended Solids (TSS) | DP-2 | <15 | mg/L | 100 | 0 | none | N/A |
| 11/20/09 0:00 | Zinc Total | DP-2 | 0.439 | mg/L | 0.11 | 3.99 | 0.12 | 3.66 |
| 2/23/10 14:30 | Aluminum Total | DP-1 | 1.09 | mg/L | 0.75 | 1.45 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 2/23/10 14:30 | Electrical Conductivity @ 25 Deg. C | DP-1 | 69.1 | umhos/cm | 200 | 0 | none | N/A |
| 2/23/10 14:30 | Iron Total | DP-1 | 1.73 | mg/L | 1 | 1.73 | 0.3 | 5.77 |
| 2/23/10 14:30 | Nitrite Plus Nitrate (as N) | DP-1 | 1.675 | mg/L | 0.68 | 2.46 | none | N/A |
| 2/23/10 14:30 | Oil and Grease | DP-1 | <10 | mg/L | 15 | 0 | none | N/A |
| 2/23/10 14:30 | pH | DP-1 | 7.26 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 2/23/10 14:30 | Total Suspended Solids (TSS) | DP-1 | 35 | mg/L | 100 | 0 | none | N/A |
| 2/23/10 14:30 | Zinc Total | DP-1 | 0.74 | mg/L | 0.11 | 6.73 | 0.12 | 6.17 |
| 2/23/10 14:35 | Aluminum Total | DP-2 | 0.127 | mg/L | 0.75 | 0 | none | N/A |
| 2/23/10 14:35 | Electrical Conductivity @ 25 Deg. C | DP-2 | 257 | umhos/cm | 200 | 1.29 | none | N/A |
| 2/23/10 14:35 | Iron Total | DP-2 | 0.797 | mg/L | 1 | 0 | 0.3 | 2.66 |
| 2/23/10 14:35 | Nitrite Plus Nitrate (as N) | DP-2 | 0.985 | mg/L | 0.68 | 1.45 | none | N/A |
| 2/23/10 14:35 | Oil and Grease | DP-2 | <10 | mg/L | 15 | 0 | none | N/A |
| 2/23/10 14:35 | pH | DP-2 | 7.09 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 2/23/10 14:35 | Total Suspended Solids (TSS) | DP-2 | <15 | mg/L | 100 | 0 | none | N/A |
| 2/23/10 14:35 | Zinc Total | DP-2 | 0.38 | mg/L | 0.11 | 3.45 | 0.12 | 3.17 |
| **2010/2011 Wet Season** | | | | | | | | |
| 2/24/11 9:30 | Aluminum Total | DP-1 | 0.677 | mg/L | 0.75 | 0 | none | N/A |
| 2/24/11 9:30 | Electrical Conductivity @ 25 Deg. C | DP-1 | 12.3 | umhos/cm | 200 | 0 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 2/24/11 9:30 | Iron  Total | DP-1 | 0.753 | mg/L | 1 | 0 | 0.3 | 2.51 |
| 2/24/11 9:30 | Nitrite Plus Nitrate (as N) | DP-1 | 0.195 | mg/L | 0.68 | 0 | none | N/A |
| 2/24/11 9:30 | Oil and Grease | DP-1 | <11.1 | mg/L | 15 | 0 | none | N/A |
| 2/24/11 9:30 | pH | DP-1 | 6.35 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0.15 |
| 2/24/11 9:30 | Total Suspended Solids (TSS) | DP-1 | ,15 | mg/L | 100 | 0 | none | N/A |
| 2/24/11 9:30 | Zinc  Total | DP-1 | 0.335 | mg/L | 0.11 | 3.05 | 0.12 | 2.79 |
| 2/24/11 9:30 | Aluminum  Total | DP-2 | 0.652 | mg/L | 0.75 | 0 | none | N/A |
| 2/24/11 9:30 | Electrical Conductivity @ 25 Deg. C | DP-2 | 12.1 | umhos/cm | 200 | 0 | none | N/A |
| 2/24/11 9:30 | Iron  Total | DP-2 | 0.827 | mg/L | 1 | 0 | 0.3 | 2.76 |
| 2/24/11 9:30 | Nitrite Plus Nitrate (as N) | DP-2 | 0.205 | mg/L | 0.68 | 0 | none | N/A |
| 2/24/11 9:30 | Oil and Grease | DP-2 | <11.1 | mg/L | 15 | 0 | none | N/A |
| 2/24/11 9:30 | pH | DP-2 | 6.57 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 2/24/11 9:30 | Total Suspended Solids (TSS) | DP-2 | ,15 | mg/L | 100 | 0 | none | N/A |
| 2/24/11 9:30 | Zinc  Total | DP-2 | 0.343 | mg/L | 0.11 | 3.12 | 0.12 | 2.86 |
| 5/25/11 12:20 | Aluminum  Total | DP-1 | 1.81 | mg/L | 0.75 | 2.41 | none | N/A |
| 5/25/11 12:20 | Electrical Conductivity @ 25 Deg. C | DP-1 | 89.3 | umhos/cm | 200 | 0 | none | N/A |
| 5/25/11 12:20 | Iron  Total | DP-1 | 2.63 | mg/L | 1 | 2.63 | 0.3 | 8.77 |
| 5/25/11 12:20 | Nitrite Plus Nitrate (as N) | DP-1 | 1.975 | mg/L | 0.68 | 2.90 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 5/25/11 12:20 | Oil and Grease | DP-1 | <12.2 | mg/L | 15 | 0 | none | N/A |
| 5/25/11 12:20 | pH | DP-1 | 6.63 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 5/25/11 12:20 | Total Suspended Solids (TSS) | DP-1 | 52 | mg/L | 100 | 0 | none | N/A |
| 5/25/11 12:20 | Zinc  Total | DP-1 | 3.74 | mg/L | 0.11 | 34 | 0.12 | 31.17 |
| 5/25/11 12:20 | Aluminum  Total | DP-2 | 1.39 | mg/L | 0.75 | 1.85 | none | N/A |
| 5/25/11 12:20 | Electrical Conductivity @ 25 Deg. C | DP-2 | 82.2 | umhos/cm | 200 | 0 | none | N/A |
| 5/25/11 12:20 | Iron  Total | DP-2 | 1.92 | mg/L | 1 | 1.92 | 0.3 | 6.40 |
| 5/25/11 12:20 | Nitrite Plus Nitrate (as N) | DP-2 | 0.265 | mg/L | 0.68 | 0 | none | N/A |
| 5/25/11 12:20 | Oil and Grease | DP-2 | <11.1 | mg/L | 15 | 0 | none | N/A |
| 5/25/11 12:20 | pH | DP-2 | 6.34 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0.16 |
| 5/25/11 12:20 | Total Suspended Solids (TSS) | DP-2 | 35 | mg/L | 100 | 0 | none | N/A |
| 5/25/11 12:20 | Zinc  Total | DP-2 | 3.27 | mg/L | 0.11 | 29.73 | 0.12 | 27.25 |
| **2011/2012 Wet Season** | | | | | | | | |
| 10/10/11 10:55 | Aluminum  Total | DP-1 | 0.554 | mg/L | 0.75 | 0 | none | N/A |
| 10/10/11 10:55 | Electrical Conductivity @ 25 Deg. C | DP-1 | 24.3 | umhos/cm | 200 | 0 | none | N/A |
| 10/10/11 10:55 | Iron  Total | DP-1 | 0.854 | mg/L | 1 | 0 | 0.3 | 2.85 |
| 10/10/11 10:55 | Nitrite Plus Nitrate (as N) | DP-1 | 0.535 | mg/L | 0.68 | 0 | none | N/A |
| 10/10/11 10:55 | Oil and Grease | DP-1 | <10 | mg/L | 15 | 0 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 10/10/11 10:55 | pH | DP-1 | 6.95 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 10/10/11 10:55 | Total Suspended Solids (TSS) | DP-1 | <15 | mg/L | 100 | 0 | none | N/A |
| 10/10/11 10:55 | Zinc Total | DP-1 | 0.422 | mg/L | 0.11 | 3.84 | 0.12 | 3.52 |
| 10/10/11 10:55 | Aluminum Total | DP-2 | 0.658 | mg/L | 0.75 | 0 | none | N/A |
| 10/10/11 10:55 | Electrical Conductivity @ 25 Deg. C | DP-2 | 23.9 | umhos/cm | 200 | 0 | none | N/A |
| 10/10/11 10:55 | Iron Total | DP-2 | 0.927 | mg/L | 1 | 0 | 0.3 | 3.09 |
| 10/10/11 10:55 | Nitrite Plus Nitrate (as N) | DP-2 | 0.515 | mg/L | 0.68 | 0 | none | N/A |
| 10/10/11 10:55 | Oil and Grease | DP-2 | <10 | mg/L | 15 | 0 | none | N/A |
| 10/10/11 10:55 | pH | DP-2 | 6.79 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 10/10/11 10:55 | Total Suspended Solids (TSS) | DP-2 | 16 | mg/L | 100 | 0 | none | N/A |
| 10/10/11 10:55 | Zinc Total | DP-2 | 0.479 | mg/L | 0.11 | 4.35 | 0.12 | 3.99 |
| 3/14/12 8:30 | Aluminum Total | DP-1 | 0.43 | mg/L | 0.75 | 0 | none | N/A |
| 3/14/12 8:30 | Electrical Conductivity @ 25 Deg. C | DP-1 | 22.3 | umhos/cm | 200 | 0 | none | N/A |
| 3/14/12 8:30 | Iron Total | DP-1 | 0.576 | mg/L | 1 | 0 | 0.3 | 1.92 |
| 3/14/12 8:30 | Nitrite Plus Nitrate (as N) | DP-1 | 0.275 | mg/L | 0.68 | 0 | none | N/A |
| 3/14/12 8:30 | Oil and Grease | DP-1 | <11.4 | mg/L | 15 | 0 | none | N/A |
| 3/14/12 8:30 | pH | DP-1 | 6.96 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 3/14/12 8:30 | Total Suspended Solids (TSS) | DP-1 | 15 | mg/L | 100 | 0 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 3/14/12 8:30 | Zinc Total | DP-1 | 0.377 | mg/L | 0.11 | 3.43 | 0.12 | 3.14 |
| 3/14/12 8:30 | Aluminum Total | DP-2 | 0.467 | mg/L | 0.75 | 0 | none | N/A |
| 3/14/12 8:30 | Electrical Conductivity @ 25 Deg. C | DP-2 | 20 | umhos/cm | 200 | 0 | none | N/A |
| 3/14/12 8:30 | Iron Total | DP-2 | 0.671 | mg/L | 1 | 0 | 0.3 | 2.24 |
| 3/14/12 8:30 | Nitrite Plus Nitrate (as N) | DP-2 | 0.265 | mg/L | 0.68 | 0 | none | N/A |
| 3/14/12 8:30 | Oil and Grease | DP-2 | <10 | mg/L | 15 | 0 | none | N/A |
| 3/14/12 8:30 | pH | DP-2 | 6.73 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 3/14/12 8:30 | Total Suspended Solids (TSS) | DP-2 | <15 | mg/L | 100 | 0 | none | N/A |
| 3/14/12 8:30 | Zinc Total | DP-2 | 0.368 | mg/L | 0.11 | 3.35 | 0.12 | 3.07 |
| **2012/2013 Wet Season** | | | | | | | | |
| 11/8/12 2:59 | Aluminum Total | DP-2 | 0.767 | mg/L | 0.75 | 1.02 | none | N/A |
| 11/8/12 2:59 | Electrical Conductivity @ 25 Deg. C | DP-2 | 53.2 | umhos/cm | 200 | 0 | none | N/A |
| 11/8/12 2:59 | Iron Total | DP-2 | 1.1 | mg/L | 1 | 1.1 | 0.3 | 3.67 |
| 11/8/12 2:59 | Nitrite Plus Nitrate (as N) | DP-2 | 0.815 | mg/L | 0.68 | 1.20 | none | N/A |
| 11/8/12 2:59 | Oil and Grease | DP-2 | <10 | mg/L | 15 | 0 | none | N/A |
| 11/8/12 2:59 | pH | DP-2 | 6.75 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 11/8/12 2:59 | Total Suspended Solids (TSS) | DP-2 | 20 | mg/L | 100 | 0 | none | N/A |
| 11/8/12 2:59 | Zinc Total | DP-2 | 0.674 | mg/L | 0.11 | 6.13 | 0.12 | 5.62 |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 11/8/12 3:09 | Aluminum Total | DP-1 | 1.07 | mg/L | 0.75 | 1.43 | none | N/A |
| 11/8/12 3:09 | Electrical Conductivity @ 25 Deg. C | DP-1 | 76.8 | umhos/cm | 200 | 0 | none | N/A |
| 11/8/12 3:09 | Iron Total | DP-1 | 1.45 | mg/L | 1 | 1.45 | 0.3 | 4.83 |
| 11/8/12 3:09 | Nitrite Plus Nitrate (as N) | DP-1 | 1.045 | mg/L | 0.68 | 1.54 | none | N/A |
| 11/8/12 3:09 | Oil and Grease | DP-1 | <10.5 | mg/L | 15 | 0 | none | N/A |
| 11/8/12 3:09 | pH | DP-1 | 6.55 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 11/8/12 3:09 | Total Suspended Solids (TSS) | DP-1 | 38 | mg/L | 100 | 0 | none | N/A |
| 11/8/12 3:09 | Zinc Total | DP-1 | 0.626 | mg/L | 0.11 | 5.69 | 0.12 | 5.22 |
| 11/8/12 3:50 | Aluminum Total | SP-1 | 1.32 | mg/L | 0.75 | 1.76 | none | N/A |
| 11/8/12 3:50 | Electrical Conductivity @ 25 Deg. C | SP-1 | 137 | umhos/cm | 200 | 0 | none | N/A |
| 11/8/12 3:50 | Iron Total | SP-1 | 1.57 | mg/L | 1 | 1.57 | 0.3 | 5.23 |
| 11/8/12 3:50 | Nitrite Plus Nitrate (as N) | SP-1 | 1.71 | mg/L | 0.68 | 2.51 | none | N/A |
| 11/8/12 3:50 | Oil and Grease | SP-1 | <11.1 | mg/L | 15 | 0 | none | N/A |
| 11/8/12 3:50 | pH | SP-1 | 7.74 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 11/8/12 3:50 | Total Suspended Solids (TSS) | SP-1 | 21 | mg/L | 100 | 0 | none | N/A |
| 11/8/12 3:50 | Zinc Total | SP-1 | 1.6 | mg/L | 0.11 | 14.55 | 0.12 | 13.33 |
| 4/4/13 7:50 | Aluminum Total | SP-1 | 0.915 | mg/L | 0.75 | 1.22 | none | N/A |
| 4/4/13 7:50 | Electrical Conductivity @ 25 Deg. C | SP-1 | 120 | umhos/cm | 200 | 0 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 4/4/13 7:50 | Iron  Total | SP-1 | 1.14 | mg/L | 1 | 1.14 | 0.3 | 3.80 |
| 4/4/13 7:50 | Nitrite Plus Nitrate (as N) | SP-1 | 0.905 | mg/L | 0.68 | 1.33 | none | N/A |
| 4/4/13 7:50 | Oil and Grease | SP-1 | <19.6 | mg/L | 15 | 0.00 | none | N/A |
| 4/4/13 7:50 | pH | SP-1 | 7.5 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 4/4/13 7:50 | Total Suspended Solids (TSS) | SP-1 | 56 | mg/L | 100 | 0 | none | N/A |
| 4/4/13 7:50 | Zinc  Total | SP-1 | 2.72 | mg/L | 0.11 | 24.73 | 0.12 | 22.67 |
| 4/4/13 8:10 | Aluminum  Total | DP-1 | 0.416 | mg/L | 0.75 | 0 | none | N/A |
| 4/4/13 8:10 | Electrical Conductivity @ 25 Deg. C | DP-1 | 33.5 | umhos/cm | 200 | 0 | none | N/A |
| 4/4/13 8:10 | Iron  Total | DP-1 | 0.506 | mg/L | 1 | 0 | 0.3 | 1.69 |
| 4/4/13 8:10 | Nitrite Plus Nitrate (as N) | DP-1 | 0.485 | mg/L | 0.68 | 0 | none | N/A |
| 4/4/13 8:10 | Oil and Grease | DP-1 | <18.2 | mg/L | 15 | 0 | none | N/A |
| 4/4/13 8:10 | pH | DP-1 | 6.79 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 4/4/13 8:10 | Total Suspended Solids (TSS) | DP-1 | <15 | mg/L | 100 | 0 | none | N/A |
| 4/4/13 8:10 | Zinc  Total | DP-1 | 0.343 | mg/L | 0.11 | 3.12 | 0.12 | 2.86 |
| 4/4/13 8:25 | Aluminum  Total | DP-2 | 0.287 | mg/L | 0.75 | 0 | none | N/A |
| 4/4/13 8:25 | Electrical Conductivity @ 25 Deg. C | DP-2 | 14.2 | umhos/cm | 200 | 0 | none | N/A |
| 4/4/13 8:25 | Iron  Total | DP-2 | 0.37 | mg/L | 1 | 0 | 0.3 | 1.23 |
| 4/4/13 8:25 | Nitrite Plus Nitrate (as N) | DP-2 | 0.305 | mg/L | 0.68 | 0 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 4/4/13 8:25 | Oil and Grease | DP-2 | 16 | mg/L | 15 | 1.07 | none | N/A |
| 4/4/13 8:25 | pH | DP-2 | 6.53 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 4/4/13 8:25 | Total Suspended Solids (TSS) | DP-2 | <15 | mg/L | 100 | 0 | none | N/A |
| 4/4/13 8:25 | Zinc Total | DP-2 | 0.449 | mg/L | 0.11 | 4.08 | 0.12 | 3.74 |
| **2013/2014 Wet Season** | | | | | | | | |
| 3/25/14 7:15 | Nitrite Plus Nitrate (as N) | DP-1 | 1.385 | mg/L | 0.68 | 2.04 | none | N/A |
| 3/25/14 7:15 | Oil and Grease | DP-1 | <11.1 | mg/L | 15 | 0 | none | N/A |
| 3/25/14 7:15 | Electrical Conductivity @ 25 Deg. C | DP-1 | 93.1 | umhos/cm | 200 | 0 | none | N/A |
| 3/25/14 7:15 | pH | DP-1 | 7.85 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 3/25/14 7:15 | Total Suspended Solids (TSS) | DP-1 | 46 | mg/L | 100 | 0 | none | N/A |
| 3/25/14 7:15 | Aluminum Total | DP-1 | 1.66 | mg/L | 0.75 | 2.21 | none | N/A |
| 3/25/14 7:15 | Iron Total | DP-1 | 2.38 | mg/L | 1 | 2.38 | 0.3 | 7.93 |
| 3/25/14 7:15 | Zinc Total | DP-1 | 1.17 | mg/L | 0.11 | 10.64 | 0.12 | 9.75 |
| 3/25/14 7:30 | Nitrite Plus Nitrate (as N) | DP-2 | 1.385 | mg/L | 0.68 | 2.04 | none | N/A |
| 3/25/14 7:30 | Oil and Grease | DP-2 | <10.9 | mg/L | 15 | 0 | none | N/A |
| 3/25/14 7:30 | Electrical Conductivity @ 25 Deg. C | DP-2 | 92.1 | umhos/cm | 200 | 0 | none | N/A |
| 3/25/14 7:30 | pH | DP-2 | 7.72 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 3/25/14 7:30 | Total Suspended Solids (TSS) | DP-2 | 43 | mg/L | 100 | 0 | none | N/A |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 3/25/14 7:30 | Aluminum Total | DP-2 | 2.17 | mg/L | 0.75 | 2.89 | none | N/A |
| 3/25/14 7:30 | Zinc Total | DP-2 | 1.16 | mg/L | 0.11 | 10.55 | 0.12 | 9.67 |
| 3/25/14 7:30 | Iron Total | DP-2 | 2.57 | mg/L | 1 | 2.57 | 0.3 | 8.57 |
| 3/25/14 7:45 | Nitrite Plus Nitrate (as N) | SP-1 | 1.84 | mg/L | 0.68 | 2.71 | none | N/A |
| 3/25/14 7:45 | Oil and Grease | SP-1 | <11.1 | mg/L | 15 | 0 | none | N/A |
| 3/25/14 7:45 | Electrical Conductivity @ 25 Deg. C | SP-1 | 171 | umhos/cm | 200 | 0 | none | N/A |
| 3/25/14 7:45 | pH | SP-1 | 8.8 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0.3 |
| 3/25/14 7:45 | Total Suspended Solids (TSS) | SP-1 | 72 | mg/L | 100 | 0 | none | N/A |
| 3/25/14 7:45 | Aluminum Total | SP-1 | 2.88 | mg/L | 0.75 | 3.84 | none | N/A |
| 3/25/14 7:45 | Zinc Total | SP-1 | 4.9 | mg/L | 0.11 | 44.55 | 0.12 | 40.83 |
| 3/25/14 7:45 | Iron Total | SP-1 | 3.89 | mg/L | 1 | 3.89 | 0.3 | 12.97 |
| 4/25/14 13:00 | Nitrite Plus Nitrate (as N) | DP-1 | 1.355 | mg/L | 0.68 | 1.99 | none | N/A |
| 4/25/14 13:00 | Oil and Grease | DP-1 | <10 | mg/L | 15 | 0 | none | N/A |
| 4/25/14 13:00 | Electrical Conductivity @ 25 Deg. C | DP-1 | Did not analyze | umhos/cm | 200 | N/A | none | N/A |
| 4/25/14 13:00 | pH | DP-1 | 6.9 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 4/25/14 13:00 | Total Suspended Solids (TSS) | DP-1 | 28 | mg/L | 100 | 0 | none | N/A |
| 4/25/14 13:00 | Zinc Total | DP-1 | 1.4 | mg/L | 0.11 | 12.73 | 0.12 | 11.67 |
| 4/25/14 13:00 | Iron Total | DP-1 | 3.87 | mg/L | 1 | 3.87 | 0.3 | 12.90 |

| Date/time of sample collection | Parameter | Sample Location | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | Water Quality Objective | Magnitude of WQO Exceedance |
|---|---|---|---|---|---|---|---|---|
| 4/25/14 13:00 | Aluminum Total | DP-1 | 2.53 | mg/L | 0.75 | 3.37 | none | N/A |
| 4/25/14 13:15 | Nitrite Plus Nitrate (as N) | DP-2 | 0.935 | mg/L | 0.68 | 1.38 | none | N/A |
| 4/25/14 13:15 | Oil and Grease | DP-2 | <10 | mg/L | 15 | 0 | none | N/A |
| 4/25/14 13:15 | Electrical Conductivity @ 25 Deg. C | DP-2 | Did not analyze | umhos/cm | 200 | N/A | none | N/A |
| 4/25/14 13:15 | pH | DP-2 | 7.23 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 4/25/14 13:15 | Total Suspended Solids (TSS) | DP-2 | <15 | mg/L | 100 | 0 | none | N/A |
| 4/25/14 13:15 | Aluminum Total | DP-2 | 1.57 | mg/L | 0.75 | 2.09 | none | N/A |
| 4/25/14 13:15 | Zinc Total | DP-2 | 0.991 | mg/L | 0.11 | 9.01 | 0.12 | 8.26 |
| 4/25/14 13:15 | Iron Total | DP-2 | 2.76 | mg/L | 1 | 2.76 | 0.3 | 9.20 |
| 4/25/14 13:30 | Nitrite Plus Nitrate (as N) | SP-1 | 1.035 | mg/L | 0.68 | 1.52 | none | N/A |
| 4/25/14 13:30 | Oil and Grease | SP-1 | <10 | mg/L | 15 | 0 | none | N/A |
| 4/25/14 13:30 | Electrical Conductivity @ 25 Deg. C | SP-1 | Did not analyze | umhos/cm | 200 | N/A | none | N/A |
| 4/25/14 13:30 | pH | SP-1 | 7.1 | SU | 6.0-9.0 | 0 | 6.5-8.5 | 0 |
| 4/25/14 13:30 | Total Suspended Solids (TSS) | SP-1 | 109 | mg/L | 100 | 1.09 | none | N/A |
| 4/25/14 13:30 | Aluminum Total | SP-1 | 7.38 | mg/L | 0.75 | 9.84 | none | N/A |
| 4/25/14 13:30 | Zinc Total | SP-1 | 6.03 | mg/L | 0.11 | 54.82 | 0.12 | 50.25 |
| 4/25/14 13:30 | Iron Total | SP-1 | 11.3 | mg/L | 1 | 11.3 | 0.3 | 37.67 |
| | | | | | Total Benchmark Exceedances | 71 | Total WQO Exceedances | 52 |

**Exhibit B**

| Arcade Creek at Winding Way Gauge | | |
|---|---|---|
| **Date** | **Day of Week** | **Rain** |
| 1/12/10 | Tuesday | 0.47 |
| 1/17/10 | Sunday | 0.32 |
| 1/21/10 | Thursday | 0.55 |
| 1/25/10 | Monday | 0.32 |
| 1/29/10 | Friday | 0.24 |
| 2/4/10 | Thursday | 0.7 |
| 2/6/10 | Saturday | 0.16 |
| 2/8/10 | Sunday | 0.12 |
| 2/23/10 | Tuesday | 0.59 |
| 2/26/10 | Friday | 0.47 |
| 2/27/10 | Saturday | 0.31 |
| 3/2/10 | Tuesday | 0.28 |
| 3/3/10 | Wednesday | 0.63 |
| 3/9/10 | Tuesday | 0.12 |
| 3/12/10 | Friday | 0.39 |
| 3/31/10 | Wednesday | 0.15 |
| 4/4/10 | Sunday | 0.75 |
| 4/11/10 | Sunday | 0.51 |
| 4/12/10 | Monday | 0.31 |
| 4/20/10 | Tuesday | 0.31 |
| 4/21/10 | Wednesday | 0.16 |
| 4/27/10 | Tuesday | 0.16 |
| 5/10/10 | Monday | 0.19 |
| 5/25/10 | Tuesday | 0.24 |
| 5/27/10 | Thursday | 0.16 |
| 10/23/10 | Saturday | 0.59 |
| 10/24/10 | Sunday | 0.48 |
| 11/7/10 | Sunday | 0.32 |
| 11/19/10 | Friday | 0.78 |
| 11/20/10 | Saturday | 0.83 |
| 11/27/10 | Saturday | 0.24 |
| 12/2/10 | Thursday | 0.24 |
| 12/4/10 | Saturday | 0.28 |
| 12/5/10 | Sunday | 0.59 |
| 12/8/10 | Wednesday | 0.11 |
| 12/14/10 | Tuesday | 0.16 |
| 12/17/10 | Friday | 0.55 |
| 12/18/10 | Saturday | 0.36 |
| 12/19/10 | Sunday | 0.28 |
| 12/21/10 | Tuesday | 0.16 |

| Date | Day of Week | Rain |
|---|---|---|
| 12/22/10 | Wednesday | 0.11 |
| 12/25/10 | Saturday | 0.71 |
| 12/28/10 | Tuesday | 0.55 |
| 1/1/11 | Saturday | 0.24 |
| 1/2/11 | Sunday | 0.24 |
| 1/13/11 | Thursday | 0.11 |
| 1/29/11 | Saturday | 0.2 |
| 1/30/11 | Sunday | 0.23 |
| 2/15/11 | Tuesday | 0.2 |
| 2/16/11 | Wednesday | 0.16 |
| 2/17/11 | Thursday | 0.47 |
| 2/18/11 | Friday | 0.55 |
| 2/24/11 | Thursday | 0.71 |
| 2/25/11 | Friday | 0.32 |
| 3/5/11 | Saturday | 0.11 |
| 3/6/11 | Sunday | 0.31 |
| 3/13/11 | Sunday | 0.75 |
| 3/14/11 | Monday | 0.19 |
| 3/15/11 | Tuesday | 0.63 |
| 3/18/11 | Friday | 0.63 |
| 3/19/11 | Saturday | 0.28 |
| 3/20/11 | Sunday | 0.36 |
| 3/23/11 | Wednesday | 0.27 |
| 3/24/11 | Thursday | 0.63 |
| 3/25/11 | Friday | 0.12 |
| 3/26/11 | Saturday | 0.27 |
| 5/15/11 | Sunday | 0.31 |
| 5/16/11 | Monday | 0.24 |
| 5/17/11 | Tuesday | 0.47 |
| 5/18/11 | Wednesday | 0.12 |
| 5/25/11 | Wednesday | 0.27 |
| 5/28/11 | Saturday | 0.2 |
| 6/1/11 | Wednesday | 0.12 |
| 6/4/11 | Saturday | 0.36 |
| 6/28/11 | Tuesday | 0.55 |
| 10/4/11 | Tuesday | 0.28 |
| 10/5/11 | Wednesday | 0.16 |
| 10/10/11 | Monday | 0.55 |
| 11/5/11 | Saturday | 0.31 |
| 11/19/11 | Saturday | 0.2 |
| 11/20/11 | Sunday | 0.12 |

| Date | Day of Week | Rain |
|---|---|---|
| 11/24/11 | Thursday | 0.11 |
| 1/19/12 | Thursday | 0.28 |
| 1/20/12 | Friday | 0.94 |
| 1/22/12 | Sunday | 0.47 |
| 1/23/12 | Monday | 0.23 |
| 2/12/12 | Sunday | 0.24 |
| 2/29/12 | Wednesday | 0.12 |
| 3/13/12 | Tuesday | 0.31 |
| 3/14/12 | Wednesday | 0.4 |
| 3/16/12 | Friday | 0.67 |
| 3/17/12 | Saturday | 0.28 |
| 3/25/12 | Sunday | 0.16 |
| 3/27/12 | Tuesday | 0.87 |
| 3/28/12 | Wednesday | 0.12 |
| 3/31/12 | Saturday | 0.43 |
| 4/11/12 | Wednesday | 0.51 |
| 4/12/12 | Thursday | 0.67 |
| 4/13/12 | Friday | 0.23 |
| 4/25/12 | Wednesday | 0.55 |
| 10/22/12 | Monday | 0.35 |
| 10/31/12 | Wednesday | 0.16 |
| 11/1/12 | Thursday | 0.19 |
| 11/8/12 | Thursday | 0.12 |
| 11/16/12 | Friday | 0.16 |
| 11/17/12 | Saturday | 0.48 |
| 11/20/12 | Monday | 0.2 |
| 11/21/12 | Tuesday | 0.19 |
| 11/28/12 | Wednesday | 0.4 |
| 11/29/12 | Thursday | 0.51 |
| 11/30/12 | Friday | 0.39 |
| 12/1/12 | Saturday | 0.44 |
| 12/2/12 | Sunday | 0.36 |
| 12/4/12 | Tuesday | 0.31 |
| 12/5/12 | Wednesday | 0.16 |
| 12/13/12 | Thursday | 0.15 |
| 12/15/12 | Saturday | 0.12 |
| 12/17/12 | Monday | 0.27 |
| 12/21/12 | Friday | 0.36 |
| 12/22/12 | Saturday | 0.31 |
| 12/23/12 | Sunday | 0.47 |
| 12/25/12 | Tuesday | 0.63 |

| Date | Day of Week | Rain |
|---|---|---|
| 1/5/13 | Saturday | 0.59 |
| 1/6/13 | Sunday | 0.12 |
| 1/23/13 | Wednesday | 0.12 |
| 2/19/13 | Tuesday | 0.2 |
| 3/6/13 | Wednesday | 0.16 |
| 3/19/13 | Tuesday | 0.2 |
| 3/20/13 | Wednesday | 0.24 |
| 3/30/13 | Saturday | 0.12 |
| 3/31/13 | Sunday | 0.35 |
| 4/4/13 | Thursday | 0.39 |
| 6/24/13 | Monday | 0.12 |
| 9/2/13 | Monday | 0.11 |
| 9/21/13 | Saturday | 0.28 |
| 11/19/13 | Tuesday | 0.55 |
| 11/20/13 | Wednesday | 0.28 |
| 12/6/13 | Friday | 0.47 |
| 12/7/13 | Saturday | 0.12 |
| 1/29/14 | Wednesday | 0.16 |
| 1/30/14 | Thursday | 0.47 |
| 2/5/14 | Wednesday | 0.12 |
| 2/6/14 | Thursday | 0.12 |
| 2/7/14 | Friday | 0.4 |
| 2/11/14 | Tuesday | 2.21 |
| 2/26/14 | Wednesday | 0.47 |
| 2/28/14 | Friday | 0.71 |
| 3/2/14 | Sunday | 0.16 |
| 3/3/14 | Monday | 0.16 |
| 3/5/14 | Wednesday | 0.47 |
| 3/10/14 | Monday | 0.2 |
| 3/26/14 | Wednesday | 0.4 |
| 3/29/14 | Saturday | 0.47 |
| 3/31/14 | Monday | 0.16 |
| 4/1/14 | Tuesday | 0.59 |
| 4/25/14 | Friday | 0.59 |
| 9/25/14 | Thursday | 0.28 |
| 9/26/14 | Friday | 0.16 |
| 12/8/14 | Monday | 4.61 |
| 12/11/14 | Thursday | 0.75 |
| 12/12/14 | Friday | 0.15 |
| 12/15/14 | Monday | 0.35 |
| 12/16/14 | Tuesday | 0.55 |

| Date | Day of Week | Rain |
|---|---|---|
| 12/17/14 | Wednesday | 0.12 |
| 12/19/14 | Friday | 0.44 |
| | **Total Number of Rain Days** | **165** |